998 F.2d 1001
 RICO Bus.Disp.Guide 8342
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Manuel RODRIGUEZ-O'FERRAL, et al., Plaintiffs, Appellants,
v.
TREBOL MOTORS CORPORATION, et al., Defendants, Appellees.
 No. 92-2303.
 United States Court of Appeals,
First Circuit.
 July 9, 1993
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO
 Luis G. Rulln-Marn with whom Zoraida Buxo was on brief for appellants.
 Mari del Carmen Taboas with whom Heriberto J. Burgos-Perez, Fiddler, Gonzlez & Rodrguez, Rafael Perez-Bachs, and McConnell, Valdes, Kelley, Sifre, Griggs & Ruiz-Suria were on brief for appellees.
 D.Puerto Rico
 AFFIRMED.
 Before Breyer, Chief Judge, Selya and Cyr, Circuit Judges.
 Per Curiam.
 
 
 1
 Plaintiffs Manuel Rodriguez O'Ferral, Edma Mirta Diaz, and their conjugal partnership, appeal from a district court judgment dismissing their civil action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c), pursuant to Fed. R. Civ. P. 12(b)(6), and denying their motion to certify a plaintiff class pursuant to Fed. R. Civ. P. 23(a). Finding no error, we affirm.
 
 
 2
 * BACKGROUND
 
 
 3
 We review a Rule 12(b)(6) dismissal de novo, accepting all allegations in the complaint, and drawing all reasonable inferences favorable to plaintiffs. Heno v. Federal Deposit Ins. Corp., No. 92-1936, slip op. at 2 (1st Cir. June 3, 1993); Feinstein v. Resolution Trust Corp., 942 F.2d 34, 37 (1st Cir. 1991). In September 1986, appellants purchased a new Volvo from Trebol Motors Corporation and Trebol Motors Distributor Corporation ("Trebol"), exclusive Volvo distributors in Puerto Rico. Appellants, who had planned to buy a Volvo 240 DL ("Volvo DL"), were persuaded by a Trebol salesman to purchase a Volvo 240 GLE ("Volvo GLE"), a more prestigious and expensive model. Thereafter, appellants discovered documentation inside the vehicle, listing its identification number and describing it as a Volvo DL.
 
 
 4
 In May 1991, appellants filed a civil RICO complaint against, inter alia, Trebol, Volvo Cars of North America, and the foreign manufacturers, Volvo Car Corporation and Volvo Gothenburg Sweden, see 18 U.S.C. § 1964(c),[1] alleging that the defendants had engaged in a seven-year scheme to defraud Trebol's customers by selling Volvo DL vehicles "doctored" by Trebol to look like their pricier cousin-the Volvo GLE.[2] As the predicate "pattern of racketeering activity," see 18 U.S.C. § 1961(1), (5), appellants alleged that the defendants committed "millions" of "public" and "private" acts of mail, wire, and bank fraud, see 18 U.S.C. §§ 1341, 1343, 1344, in furtherance of their GLE scam. The predicate "private" acts allegedly consisted of an unspecified number of telephone, wire, and mail communications among the various defendants. Appellants asserted that further discovery of defendants' internal business records would be necessary to enable them to specify the exact contents and participants in these communications. See New England Data Servs., Inc. v. Becher, 829 F.2d 286, 291 (1st Cir. 1987) (favoring liberal pre-dismissal discovery to permit RICO plaintiffs to allege "scheme to defraud" by obtaining information regarding the time, place, and contents of confidential communications within defendants' exclusive control). On the other hand, the predicate "public" acts allegedly consisted of Trebol's commercial advertisements and direct promotional mailings enticing customers into Trebol to purchase Volvo GLEs during the period from 1984 to 1991. Attached to their complaint were photocopies of nine ads and eight mailings, all dated after July 1989. Appellants themselves allegedly sustained property damage in the amount of $5,000, the net cost differential between the Volvo DL and the pseudo-Volvo GLE, and sought certification of a plaintiff class, estimated at 15,000 Trebol customers who purchased GLEs from 1984 to 1991, holding aggregate claims of $75 million trebled ($225 million).
 
 
 5
 The district court stayed further discovery pending disposition of defendants' Rule 12(b)(6) motion and appellants' motion for certification under Rule 23(a). Meantime, the court directed appellants to submit a more particularized statement of their RICO claim, fleshing out the factual underpinnings for the allegations in their complaint.[3] In September 1992, based on the unmended vagueness of appellants' particularized seventy-nine page RICO-claim statement, the court denied their motion for class certification, and dismissed the complaint for failure to allege predicate acts of fraud with sufficient particularity under Fed. R. Civ. P. 9(b).[4] Thereafter, the court denied plaintiffs' motion to amend the complaint. See infra note 8.
 
 II
 DISCUSSION
 
 6
 We have imposed a threshold requirement that a RICO complaint "state facts sufficient to portray (i) specific instances of racketeering activity within the reach of the RICO statute and (ii) a causal nexus between that activity and the harm alleged." Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir. 1991) (emphasis added); see also Figueroa-Ruiz v. Alegria, 896 F.2d 645, 648 n.3 (1st Cir. 1990) (delineation of predicate acts of fraud under RICO must go beyond "vague references"); supra note 4. We turn first to the conspicuous temporal impediments underlying appellants' "causal nexus" allegations.
 
 
 7
 Appellants concede that Trebol's seventeen advertisements and mailings, none of which preceded their own 1986 Volvo purchase and most of which (with one exception) were not directed to appellants, could not have been the proximate cause of their injury. See Arzuaga-Collazo v. Oriental Fed. Sav. Bank, 913 F.2d 5, 7 (1st Cir. 1990) (defendants' misrepresentations took place after plaintiffs' injury, sustained at the time they moved into the defective homes); McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc., 904 F.2d 786, 792 (1st Cir.) (illegal payments occurred after RICO defendant terminated contract), cert. denied, 498 U.S. 992 (1990); see also supra note 3. They argue, nonetheless, that recovery under RICO may be predicated on what they characterize as an "indirect" section 1962 injury.[5] For the reasons discussed below, we need not reach appellants' circuitous "causal nexus" argument.
 
 
 8
 Even assuming their argument had merit, their alleged "section 1962 injury" would be actionable under RICO only if the predicate acts alleged in the complaint constitute "racketeering activity" or, in other words, were "indictable" under the mail, wire or bank fraud statutes. See 18 U.S.C. 1961(1). Their complaint alleged that the defendants "falsely represented to customers willing to purchase motor vehicles that they have available for sale factory made models (such as the Volvo 240 GLE), which were models distinct and allegedly superior to the other models then manufactured by the company (such as the Volvo 240 DL)," and that plaintiffs "relied on, and accepted as true[,] the representations [that] ... they were actually purchasing a superior automobile, a so-called 'international classic', factory built and inherently more expensive motor vehicle."
 
 
 9
 Although we have combed the entire record, we find no indication that Trebol ever falsely represented that it was selling "factory made" Volvo GLEs, as plaintiffs assert. On the contrary, during its twenty-fifth anniversary sale at least, Trebol advertised for sale its own customized versions of the Volvo GLE ("ha sido preparado especialemente para conmemorar") apparently configured with optional equipment in essentially the same fashion as the vehicle plaintiffs purchased. Moreover, appellants never alleged or demonstrated that the nominal classification "GLE", whether generated at the factory or elsewhere along the distributional chain, invariably connotes a fixed set of features or options of determinate value, nor have appellants suggested that defendants misled them as to the options or features actually incorporated in the Volvo 240 GLE they purchased. Rather, these ads and mailings suggest, at most, that plaintiffs presumed too much-namely, that all Volvo GLEs were monolithic and immutable assemblages. Although various types of "deceptive conduct" other than affirmative misrepresentations may amount to a "scheme to defraud" under the mail, wire, or bank fraud statutes, see United States v. Brien, 617 F.2d 299, 307 (1st Cir.), cert. denied, 446 U.S. 919 (1980); see also United States v. Fontana, 948 F.2d 796, 806 (1st Cir. 1991) (mail fraud); McEvoy, 904 F.2d at 791 (mail fraud and RICO), we think the requirements of Rule 9(b) demand greater particularity than plaintiffs provided here, even in the liberal environs of Rule 12(b)(6).
 
 
 10
 Appellants' complaint asserts that, even if defendants made no misrepresentations or misleading statements, the scheme to defraud was perpetuated "through their nondisclosure ... of material facts involved in the purchases, namely, the non-existence of the 240 GLE ... or the fact that they were making minor and inexpensive modifications to the less expensive models in order for them to appear to be more expensive models and/or the fact that these models were modified in situ and were not built at the manufacturing plant." (Emphasis added.) They argue that their civil RICO claim need not depend on an allegation that the defendants were under an affirmative duty to disclose. We do not agree. Especially when alleged violations of the mail, wire, or bank fraud statutes form the predicate acts relied on in a civil RICO complaint, mere nondisclosure will not defeat a Rule 12(b)(6) motion absent a demonstrated affirmative duty to disclose, or some special circumstance not presented here. See, e.g., Reynolds v. East Dyer Dev. Co., 882 F.2d 1249, 1252 (7th Cir. 1989) (absent some statutory or fiduciary duty, affirmative misrepresentations, "half-truths," or elaborate or deliberate acts of concealment, mail and wire fraud statutes cannot form predicate for RICO violation).[6] Absent such a threshold requirement, civil RICO could be invoked for the redress of routine "consumer protection" and "breach of contract" claims. See Arzuaga-Collazo, 913 F.2d at 5, 6-7 (suggesting that RICO claims which reduce to ordinary "consumer protection" claims, based on sellers' nondisclosure of material information, are best left to remediation under state law).[7]
 
 
 11
 Even if further particularization of the alleged "private" predicate acts might arguably await additional discovery, appellants have failed to allege even one "public" predicate act-that is, an act of misrepresentation or actionable nondisclosure by Trebol which satisfies the specificity requirement of Fed. R. Civ. P. 9(b). See New England Data, 829 F.2d at 291 (liberal discovery allowed only if RICO complaint "otherwise alleges detailed facts") (emphasis added). Were these RICO plaintiffs licensed to launch a belated "fishing expedition" on the brink of a Rule 12(b)(6) dismissal, without having made at least one manifest allegation of actionable fraud, we would invite commonplace abuse of civil RICO and routine deferral of the particularized pleading required by Rule 9(b). The district court appropriately concluded that additional discovery would amount to an unwarranted and "expensive fishing expedition," and properly dismissed the complaint for failure to state a claim.[8]
 
 
 12
 Affirmed.
 
 
 
 [1]
 RICO § 1964(c) provides:
 Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.
 18 U.S.C. § 1964(c). Appellants alleged violations of § 1962(a) (to "use or invest" income derived from a "pattern of racketeering activity"), § 1962(b) (to "acquire or maintain" through a "pattern of racketeering activity" an interest in any enterprise), § 1962(c) (to "conduct or participate" through a "pattern of racketeering activity" in the conduct of any enterprise), and § 1962(d) (to "conspire" to violate § 1962(a), (b), or (c)).
 
 
 [2]
 Appellants alternatively allege that Volvo discontinued its premium GLE model by 1984 (a material fact which Trebol allegedly withheld from its Puerto Rico customers), or that if factory-made GLEs were still in production at Volvo, Trebol chose to import the less expensive DL models, which had been fitted with $2,000 worth of additional options. Trebol sent the Volvo DLs to Showroom Auto Services, Inc., which replaced the DL identification "badge" on the automobile with a GLE badge, and removed all other documentary evidence of the DL model classification. Trebol listed the disguised DLs as GLEs at $7000 over the price for its standard DL models, a price which far exceeded the cost of the $2000 option package incorporated in each car. The alleged "scheme" resulted in net damages of $5,000 to each Trebol customer
 
 
 [3]
 Far from particularizing appellants' complaint, the RICO-claim statement provides general statistical data concerning Trebol's total television and newspaper advertising expenses for the years 1988-1991. Appellants also alleged that they had found that 15 more Trebol advertisements were published in a local newspaper during August and September 1986, at or about the time they purchased their Volvo GLE. No photocopies of these ads were appended. As described by appellants, however, these ads merely "offer[ed] for sale a Volvo 240 GLE," but contained no other representations by Trebol. Most importantly, appellants implicitly concede in their complaint that Trebol's advertisements and mailing did not lure them into buying a GLE, since appellants arrived on the Trebol lot in 1986 intent on purchasing a Volvo DL
 
 
 [4]
 Rule 9(b) requires that, "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Rule 9(b) disqualifies conclusory factual allegations which do not afford sufficient notice of the fraud claim to enable defendants to prepare their defense, with a view to minimizing the reputational harm caused by the filing of pretextual or frivolous fraud claims. See New England Data, 829 F.2d at 289
 
 
 [5]
 Appellants argue that Holmes v. Securities Investor Protection Corp., 112 S. Ct. 1311 (1992), and Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985), support the view that specific allegations that other Trebol customers probably were induced to buy Volvo GLEs as a result of particular acts of mail and wire fraud, and that those customers incurred "section 1961 injuries" (i.e., damages directly traceable to predicate acts of fraud) would suffice to establish Trebol's continuing "scheme to defraud." It follows, say appellants, that they need not allege with further specificity any particular predicate act of fraud which directly caused them to buy their 1986 Volvo, provided their injury proximately resulted from Trebol's sale of a disguised Volvo DL, or in other words, as an integral part of the same "scheme to defraud." See 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 ....") (emphasis added)
 
 
 [6]
 See also United States v. Biesiadecki, 933 F.2d 539, 542-43 (7th Cir. 1991) (distinguishing Reynolds as nondisclosure case, noting that nondisclosure may serve as evidence of fraud when coupled with affirmative misrepresentations); Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1416 (3d Cir.), cert. denied, 111 S. Ct. 2839 (1991); California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1472 (9th Cir. 1987), cert. denied, 484 U.S. 1006 (1988)
 
 
 [7]
 As newfound grounds for asserting that defendants had a duty to disclose, appellants ask this court to take judicial notice of the Disclosure of Automobile Information Act, 15 U.S.C. §§ 1231-1233, and its Commonwealth analog, P.R. Laws Ann. tit. 13, § 7351, which purportedly proscribe the removal of automobile manufacturers' labels disclosing new-vehicle model classifications. Neither statute was cited or argued to the district court. Issues raised for the first time on appeal are deemed waived. See Arzuaga-Collazo, 913 F.2d at 7 (RICO plaintiffs cannot rely on Thrift Institutions Restructuring Act on appeal from a Rule 12(b)(6) dismissal if they did not assert a TIRA claim "either before or after judgment was entered" in district court); see also Goldman v. First Nat'l Bank, 985 F.2d 1113, 1116 n. 3 (1st Cir. 1993); Miller v. United States Postal Serv., 985 F.2d 9, 12 (1st Cir. 1993)
 
 
 [8]
 Appellants moved to amend their complaint following its dismissal. The motion identified, for the first time, a few other members of the proposed plaintiff class (persons who had bought Volvo GLEs from Trebol), and adverted to additional Trebol advertisements published just prior to appellants' 1986 Volvo purchase. For the reasons previously stated, neither amendment would have cured the essential deficiency in their complaint-the failure to allege even one affirmative misrepresentation or a duty to disclose material facts. See Correa-Martinez v. ArrillagaBelendez, 903 F.2d 49, 59 (1st Cir. 1990) (no abuse of discretion where RICO complaint was so vague that proposed amendment would be "futile")