USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1870 MANUEL RODRIGUEZ O'FERRAL, ET AL., Plaintiffs, Appellants, v. TREBOL MOTORS CORPORATION, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Carmen C. Cerezo, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Boudin, Circuit Judge, _____________ and Boyle,* Senior District Judge.  _____________________ ____________________ Luiz G. Rullan with whom Limeres, Vergne, Duran & Rullan was on _______________ _________________________________ brief for appellants. Maria del Carmen Taboas with whom Fiddler, Gonzalez & Rodriguez ________________________ ______________________________ was on brief for appellees. ____________________ January 27, 1995 ____________________  ____________________ *Of the District of Rhode Island, sitting by designation. Per Curiam. In May 1991 Manuel Rodriguez-O'Ferral, his __________ wife and their conjugal partnership brought a civil RICO action in the district court in Puerto Rico against Trebol Motors Corp., which distributes Volvos there. 18 U.S.C. 1961 et seq. Also named were the Swedish manufacturer of the _______ car, its North American distributor, and officers of Trebol. The gist of the complaint was a garden variety consumer deception charge sought to be brought within RICO by claims that pertinent advertising comprised mail and wire fraud. In brief, the complaint charged that Volvo had earlier made two related models, a 240 DL and a more expensive 240 GLE with additional features; that in 1984 Volvo had ceased to make (or at least to export to Puerto Rico) the latter model; that Trebol had thereafter ordered the DL model with extra features and attached its own GLE badge; that Trebol had advertised these cars as GLEs; that the added features cost Trebol significantly less than its mark-up over the DL price; and that Rodriguez and his wife had been duped and injured when in 1986 they had brought one of these upgraded DLs under the impression that it was a factory made GLE. None of the advertisements cited by the plaintiffs had occurred until after plaintiffs bought their own car; but, framing the RICO suit as a class action on behalf of 15,000 customers allegedly so deceived, plaintiffs' counsel asserted that this did not matter. The complaint sought treble -2- -2- damages, as permitted by RICO, 18 U.S.C. 1964(c); given an alleged $5,000 loss per customer, this brought the total ad __ damnum to $225 million. The complaint was signed by Jose ______ Quetglas Jordan, one of the plaintiffs' attorneys. The district court ordered the plaintiffs to submit a "RICO case statement," which sets forth answers to a standard questionnaire that the court by standing order routinely employed in civil RICO cases. See Miranda v. Ponce Federal ___ _______ _____________ Bank, 948 F.2d 41, 44 n.3 (1st Cir. 1991). The filing is ____ intended to adduce the specifics that underlie general claims of RICO misconduct. In this instance, the filing--signed both by Quetglas and by co-counsel Luis Rullan Marin--was extensive but it failed substantially to bolster the general claims of fraud. In particular, there was nothing even by way of allegation to show that the features added at Trebol's request were fewer than, or inferior to, those that Volvo ordinarily supplied in its GLE car. It was alleged that Trebol represented the cars as factory-made, but those allegations were not borne out by the advertisements. The case statement did not point to any other express statement in the advertising alleged to be false. Nor were there other allegations of fact from which fraudulent intent could easily be inferred. -3- -3- The district court then dismissed the case, ruling that no RICO claim had been set forth, Fed. R. Civ. P. 12(b)(6), and that the plaintiffs had failed to alleged fraud with the required particularity, Fed. R. Civ. P. 9. On appeal, this court affirmed in a unpublished per curiam opinion; without ___________ resolving plaintiffs' standing, we held that in this context mere nondisclosure, absent some affirmative misrepresentation or a special duty of disclosure, does not comprise RICO fraud. Rodriguez O'Ferral v. Trebol Motors Corp., No. 92- __________________ ___________________ 2303, slip op. at 8-9 (1st Cir., July 9, 1993) (citing cases from other circuits). While the appeal was pending, defendants moved for sanctions against plaintiffs' attorneys under Fed. R. Civ. P. 11 for filing a groundless action. Finding a lack of reasonable inquiry, the court awarded the defendants $8,000 as attorney's fees as a sanction. Independently, the court awarded the defendants costs in the amount of $3,973.40. On this appeal, Rullan disputes the award of attorney's fees against him as to both basis and amount (co-counsel have not appealed). The award of costs is also challenged. Starting with the sanction, we think it plain that the plaintiffs' suit was extremely thin. The question whether it was so thin as to warrant sanctions is, as is typical in Rule 11 matters, a "judgment call," Anderson v. Beatrice Foods ________ ______________ Co., 900 F.2d 388, 394 (1st Cir.), cert. denied, 498 U.S. 891 ___ ____________ -4- -4- (1990), ordinarily reviewed only for abuse of discretion. Kale v. Combined Ins. Co., 861 F.2d 746, 757-58 (1st Cir. ____ __________________ 1988). Still, there may be a determination of law that underpins an award of sanctions, and Rullan raises such an issue here. Pointing out that he did not sign the complaint, Rullan says that the only pleading to which he is connected is the RICO case statement. This case statement, he says, did not institute the action or amend the complaint; the fault, if any, is with the original complaint; and to impose sanctions on him is therefore to impose on him a "continuing obligation" to assure that a case does not continue unless it is well grounded. Although this court used "continuing obligation" language in Cruz v. Savage, 896 F.2d 626, 630 ____ ______ (1st Cir. 1990), Rullan says that the Fifth Circuit precedents relied on in Cruz have been overruled and that all ____ other circuits reject the continuing obligation theory.1 Rule 11 is not all of a piece. Much of its language is directed to the signing of documents, see Rule 11(a), but at least one sentence concerns "later advocating" an earlier filed document. Rule 11(b). We have no occasion to pursue  ____________________ 1Thomas v. Capital Sec. Servs., Inc., 836 F.2d 866, 874- ______ _________________________ 75 (5th Cir. 1988) (en banc) (rejecting any such continuing _______ obligation); see also Dahnke v. Teamsters Local 695, 906 F.2d ________ ______ ___________________ 1192, 1200-01 (7th Cir. 1990) (same); Corporation of _______________ Presiding Bishop of Jesus Christ of Latter-Day Saints v. _________________________________________________________ Associated Contractors, Inc., 877 F.2d 938, 942-43 (11th Cir. ____________________________ 1989) (same), cert. denied, 493 U.S. 1079 (1990). ____________ -5- -5- the problem in this case because Rullan did sign the RICO case statement which effectively reasserted the positions taken in the complaint. Indeed, the intended purpose of the case statement was to flesh out and particularize the complaint; and at the time that Rullan placed his signature on the document, the fraud claims which remained inadequate became his own. As we have said, it is a judgment call whether the defects were so severe as to justify a court in concluding that the assertion of the RICO claims was done in bad faith or without reasonable inquiry. Here, other circuits prior to the case statement had already ruled that mere nondisclosure in a context like this one did not support a claim of RICO fraud; but we had not done so and, if this were the only flaw, one might argue about whether Rullan was obliged to anticipate our ruling. But even if nondisclosure were here enough for RICO fraud, nothing in the case statement here points directly to fraudulent intent. Fraudulent intent is often easy to infer from an affirmative false statement; but no one could fairly infer fraudulent intent merely from the nondisclosure attributed to Trebol. The car did have extra features; as it happens they were installed in the Volvo factory; and the central, identified nondisclosure appears to be that the badge was added in Puerto Rico. To say that the cars were -6- -6- not genuine GLEs without pointing to material differences is unpersuasive. As to the amount of the sanction, admittedly the district court did not explain the basis for the calculation that led to the $8,000 figure. But the complaint sought $225 million for a large class, and the litigation consumed more than two years and generated a record that stands nearly a foot high. Further, the case statement was not some incidental filing--say, a dispute about one deposition or discovery request--but related to the core of the case and was a condition of any further proceedings. No one remotely familiar with lawyer fees can doubt that the defense spent vastly more than $8,000 on this case. The district court plainly chose a figure that, measured by defense costs, was practically nominal but was large enough to serve as a warning and deterrent to counsel. Explanations are always helpful, and in some cases explanations may be required for appellate review of a Rule 11 award; but the logic of the district court's approach here is not mysterious, and the result is well within the wide latitude allowed for remedial judgments. Finally, we find no error in the award of other defense costs in the amount of $3,973.40, for such matters as photocopying, translation, delivery, and other logistics. Despite plaintiffs' contrary claim, the award was timely even -7- -7- though made after the original judgment; the district court may wait until a judgment is affirmed on appeal before awarding costs. See 10 C. Wright & A. Miller, Federal ___ _______ Practice and Procedure 2668, at 212 (2d Ed. 1983). ______________________ Plaintiffs also claim that because RICO provides for an award of costs to plaintiffs, 18 U.S.C. 1964(c), it implicitly bars costs for defendants even if elsewhere authorized. We see no basis for such an implication. Fed. R. Civ. P. 54(d)(1) allows costs other than attorney's fees to the prevailing party as a matter of course unless the court directs otherwise; the introductory proviso to the rule ("Except when express provision therefor is made . . . in a statute of the United States") might limit a court's discretion to deny costs to a prevailing RICO plaintiff, but does not affect an award of defense costs--which RICO does not address. It is true that some of the costs allowed by the district court went beyond those listed in 28 U.S.C. 1920, but a district court has discretion to award costs other than those so enumerated. Although this discretion "should be used sparingly" for such expenses, Farmer v. Arabian Amer. ______ _____________ Oil Co., 379 U.S. 227, 235 (1964), we have examined the costs _______ allowed and conclude that there was no abuse of discretion in this case. Affirmed. ________ -8- -8- -9- -9-