**Angela FUSCO, Plaintiff,**

v.

**David MEDEIROS, William Filene's Sons Company, May Department Stores Company, Marsha Fogarty, Joseph Koechel, and Beverly Shea, Defendants.**

Civil Action No. 91–0333–L.

United States District Court,
D. Rhode Island.

Aug. 6, 1996.

234

Randy Olen, Providence, RI, for Angela Fusco.

Samuel D. Zurier, Michaelson & Michaelson, Providence, RI, for Filene Defendants.

Ina P. Schiff, Providence, RI, pro se.

## MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This matter is before the Court on the objection of respondent Attorney Ina P. Schiff ("Schiff") to the Report and Recommendation of Magistrate Judge Timothy M. Boudewyns dated March 11, 1996. In his Report, the magistrate judge recommends that the Court grant the motion of defendants David Medeiros, William Filene's Sons Company, May Department Stores Company, Marsha Fogarty, Joseph Koechel, and Beverly Shea (collectively, the "Filene's defendants") for sanctions and attorneys' fees pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927 as to Schiff, deny the motion as to plaintiff Angela Fusco ("Fusco"), and deny the Filene's defendants' request for reimbursement of attorneys' fees under 42 U.S.C. § 1988.

### I. Discussion

The Court concludes, as did the magistrate judge, that Schiff's filing of Fusco's verified complaint was in violation of Fed.R.Civ.P. 11 and that her subsequent conduct violated 28 U.S.C. § 1927. The facts as set forth in the magistrate judge's exhaustive and thoughtful Report and Recommendation establish that each and every count of Fusco's complaint was frivolous in that each count was either without factual support or legal basis. Similarly, the magistrate judge's recitation of Schiff's actions after the filing of the Complaint recounts a tale of proceedings multiplied "unreasonably and vexatiously[.]" 28 U.S.C. § 1927.

Schiff's arguments in opposition to the Report and Recommendation are without merit; *ad hominem* attacks on the magistrate judge's impartiality and repetition of the fanciful legal theories that spawned this lawsuit do nothing to justify Schiff's actions. The facts as detailed in the Report are sufficient to refute her contentions, and the Court will add nothing more on that score.

■ The primary legal issue facing this Court is whether Schiff's conduct is to be judged by the standards of the Rule 11 in force prior to the December 1, 1993 amendments to the Federal Rules of Civil Procedure (the "old Rule 11") or whether the post-amendment rule (the "new Rule 11") must be applied. The Court recognizes that amendments to the Federal Rules enjoy the presumption of retroactivity, see *Moreno Vda. Acosta v. Hospital Bella Vista*, 164 F.R.D. 140, 142 (D.P.R.1995), and that the Supreme Court's order of April 22, 1993 stated:

> [T]he foregoing amendments to the Federal Rules of Civil Procedure shall take effect on December 1, 1993, and shall govern all proceedings in civil cases thereafter commenced and, *insofar as just and practicable, all proceedings in civil cases then pending.*

113 S.Ct. CDLXXVII (emphasis added); *see also* 28 U.S.C. § 2074 (1994) (the Supreme Court may order new rules applied to pending proceedings, except where the application of such rule "would not be feasible or would work injustice[.]"). Nevertheless, in *Silva v. Witschen*, 19 F.3d 725 (1st Cir.1994), the First Circuit stated that the 1993 promulgation order precluded application to pending cases if "it would be *unjust or impracticable* to do so." *Id.* at 728 (emphasis in original).[1]

---

1. Some courts have read "insofar as just and practicable" as an exhortation to apply the amended rules "to the maximum extent possible[.]" *Skoczylas v. Federal Bureau of Prisons,* 961 F.2d 543, 546 (5th Cir.1992) (applying a 1991 amendment to Fed.R.Civ.P. 15(c)); *see also, Burt v. Ware,* 14 F.3d 256, 258–259 (5th Cir. 1994) (applying *Skoczylas* to the 1993 amend-

The *Silva* Court held that, although the respondent's appeal was pending at the time of the December 1, 1993 amendments, application of the new Rule 11 would require a burdensome, impractical remand and continued unfairness to the movants-appellees. *Id.* at 729. Thus, the First Circuit declined to apply the new Rule 11 and the sanction order entered by this Court was reviewed "under the pre-amendment Rule 11 standards in force at the time the sanctioned conduct occurred." *Id.* In a similar vein, other courts have treated the date of the sanctionable conduct as presumptively determining which version of Rule 11 to apply. See *Knipe v. Skinner*, 19 F.3d 72, 78 (2nd Cir.1994), *cert. denied,* 513 U.S. 963, 115 S.Ct. 424, 130 L.Ed.2d 338 (1994) ("Any further retroactive application of the amended Rule 11 would charge [counsel] with knowledge of a rule not in effect at the time of filing and therefore would not advance Rule 11's central goal of deterring baseless filings."); *MacDraw Inc. v. CIT Group Equipment Financing Inc.,* 73 F.3d 1253, 1257 (2nd Cir.1996) (district court "required" to apply pre–1993 Rule 11 to allegedly sanctionable conduct that occurred prior to effective date of amendments); *Rodriguez v. Banco Cent.,* 155 F.R.D. 403, 405 n. 1 (D.P.R.1994) ("Because all potentially sanctionable conduct in this case took place before December 1993, and the motions for sanctions were filed before that date, we will apply the version of Rule 11 which exited prior to the 1993 amendment.").

█ Looking to the dates of Schiff's sanctionable conduct, the Court finds that old

Rule 11 is the rule properly applied to the Filene's defendants' motion for sanctions. But for a few weeks, Schiff's entire involvement in this matter occurred before the December 1, 1993 amendment of Rule 11. The offending complaint was filed on July 1, 1991. As of that day, Schiff was guilty of making representations to this Court that were baseless and formed without reasonable inquiry. Not long into these proceedings, Schiff was on notice that her actions had drawn the Court's ire: On July 17, 1992, Magistrate Judge Jacob Hagopian fined Fusco $625.00 for failing to comply with the Court's discovery orders. Subsequent sanctions were meted out on November 20, 1992, and on April 20, 1993. On August 10, 1993, Magistrate Judge Boudewyns recommended that Fusco's complaint be dismissed *in toto* as a penalty for her and Schiff's refusal to respond to discovery requests. This writer accepted the magistrate judge's report on December 15, 1993, as to the Filene's defendants [2] and dismissed the case against them as an explicit sanction for Schiff's continued, contumacious conduct.[3] *Fusco v. Medeiros,* —— F.Supp. ——. (D.R.I.1993). One month later, on January 14, 1994, when the new Rule 11 was still wrapped in swaddling clothes, Fusco requested Schiff's withdrawal as her attorney.

The magistrate judge, in his Report and Recommendation, accurately predicted that the Court would apply the old Rule 11. The Court therefore adopts Magistrate Judge

---

ments to the Federal Rules of Appellate Procedure). However, in *Silva,* the First Circuit read the promulgation order as containing a prohibition rather than a call to arms, 19 F.3d at 728; hence, the Court feels free to treat the issue as a simple matter of justice and practicality.

2. The City of Warwick defendants were not dismissed because they had not sought the discovery involved in Schiff's stonewalling tactics.

3. In *Cruz v. Savage,* 896 F.2d 626 (1st Cir.1990), the First Circuit wrote that under the old Rule 11, "attorneys [were] also under a continuing obligation to ensure that the proceedings do not continue without a reasonable basis in law and fact." *Id.* at 630. However, that commandment was cast into considerable doubt by *O'Ferral v. Trebol Motors Corp.,* 45 F.3d 561, 563 & n. 1 (1st Cir.1995), where the First Circuit noted that

Fifth Circuit precedents relied on in *Cruz* had been overruled. The *O'Ferral* court, however, refused to revisit the issue, and did not explicitly disown *Cruz*'s "continuing obligation" language. *O'Ferral,* 45 F.3d at 563. Out of an abundance of caution, this Court will. Schiff's Rule 11 violation occurred when she filed the complaint; her subsequent conduct left her afoul of 42 U.S.C. § 1927, but not Rule 11. However, the Court considers the discovery sanctions awarded in this matter to be highly relevant to the determination of the nature and purposes of the Rule 11 sanctions hereby to be imposed. *See, e.g., Kramer v. Tribe,* 156 F.R.D. 96, 104–108 (D.N.J. 1994), *aff'd* 52 F.3d 315 (3rd Cir.1995) (listing 36 separate instances in which respondent Kramer was punished, sanctioned, or admonished by other courts).

Boudewyns' careful analysis under the rule, and will not replicate it here.

■ Sanctions under the old Rule 11 were mandatory, *Lancellotti v. Fay,* 909 F.2d 15, 19 (1st Cir.1990), and compensation of the prevailing party was a recognized purpose of the rule. *Silva,* 19 F.3d at 729 n. 5. Thus, the Report and Recommendation of March 11, 1996 is accepted and adopted, and Schiff is hereby sanctioned and ordered to pay the Filene's defendants the sum of $95,834.86, representing the costs and attorneys' fees incurred by them.

The Court wishes to note, however, that the choice of the old Rule 11 over the new Rule 11, to a great degree, is an academic one. The Court is convinced that even under the new Rule 11, Schiff would suffer the same sanction. The rule states:

> **(b) Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> \* \* \* \* \* \*
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed.R.Civ.P. 11(b) & (b)(3). In contrast to the old Rule 11, under which attorneys had to certify "after reasonable inquiry" that their representations were "well grounded in fact," Fed.R.Civ.P. 11 (1983), the new Rule 11 mandates only that an attorney certify that "to the best of the person's knowledge[,] formed after an inquiry reasonable under the circumstances," the allegations "have [or] are likely to have evidentiary support[.]" Fed. R.Civ.P. 11(b) & (b)(3). The investigatory burdens on an attorney prior to filing have thus been lightened. See *Hadges v. Yonkers*

*Racing Corp.,* 48 F.3d 1320, 1329–30 (2nd Cir.1995) (holding that "an attorney is entitled to rely on the objectively reasonable representations of the client"). Yet Schiff's actions would run afoul of even the new standard: The Report and Recommendation makes clear that Schiff did not conduct an "inquiry reasonable under the circumstances," that *she* provided some of the most outlandish facts to Fusco,[4] and that very few of her allegations had any evidentiary support. Nor would they ever—despite Schiff's abusive and harassing discovery requests. Thus the facts set forth in the Report and Recommendation equally support a violation of the new Rule 11(b)(3).

The purpose of sanctions under the new Rule 11 "is to deter rather than compensate." Fed.R.Civ.P. 11 advisory committee notes. However, Rule 11(c)(2) provides that:

> [If] imposed on motion and warranted for effective deterrence, [the sanction may consist of] an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

The advisory committee notes to the 1993 amendments state that an award of attorneys' fees may occur "under unusual circumstances[.]" There was nothing usual about this litigation at all: The charges leveled by Schiff were extravagant, paranoid, and totally devoid of merit. The Filene's defendants were forced to defend themselves against § 1983 claims born of groundless theories of state actorship, Title VII claims that had not been presented to the proper administrative agencies, obstruction of justice claims that relied on the flimsiest of hearsay, and intentional infliction of emotional distress claims that never should have been brought to this Court. Schiff's subsequent conduct during the discovery phase caused Filene's defendants to spend tens of thousands of dollars more than would normally be spent defending a legitimate sexual harassment suit. They expended additional sums to overcome the stonewall she constructed against movants' discovery requests which finally was the

---

**4.** Schiff's invention of the 200 victims of sexual discrimination underlay the class action element of the case.

direct and proximate cause of the Court's dismissal of the case against them. That Schiff should be ordered to reimburse the Filene's defendants for their costs and attorneys' fees is not only appropriate, but really the only way truly to do justice in this case, given the surreal nature of Fusco's complaint and what followed.

Nor would the Court be willing, under the new Rule, to reduce the sanctions award below the $95,834.86 recommended. The Court acknowledges that sanctions under the new Rule 11(c)(2) "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." *Id.* Still, when applying the factors enumerated in the 1993 advisory committee notes,[5] the Court finds that Schiff's inflation of the claims in this matter was willful and continued; that it was the first note in a symphony of evasions, discovery abuses, and insults to this Court; and that the entire complaint was infected by her unsupportable claims. The effect on the litigation was an outrageous escalation of time and costs, and the Court's willingness to sanction Fusco repeatedly for Schiff's conduct did nothing to stop Schiff—until the day when the Court dismissed the case as punishment for that conduct. Despite her expertise in civil rights law, Schiff still has not realized that Fusco never had a case. The only way the Court can imagine that Schiff would be deterred from launching another *Fusco* fiasco is by ordering her to make full amends for the expense she inflicted on movants. Hence, the Court would issue the same order under the new Rule 11(c)(2) that it issues today under the old Rule 11. *Cf. Giangrasso v. Kittatinny Reg. High Sch. Bd. of Educ.,* 865 F.Supp. 1133, 1142 (D.N.J.1994) (awarding $100,000 in attorneys' fees to movants, on grounds that large sum is necessary "[to]

satisfy the requirement that sanctions be sufficient to deter repetition."); *Kramer v. Tribe,* 156 F.R.D. 96, 111 (D.N.J.1994), *aff'd* 52 F.3d 315 (3rd Cir.1995) (awarding $70,-289.00 in attorneys' fees and costs under the new Rule 11 and 28 U.S.C. § 1927).

Lastly, the Court opines that 28 U.S.C. § 1927, for the reasons set forth in the Report and Recommendation, provides an independent statutory basis for the full award of attorneys' fees and costs to the Filene's defendants. *See Cruz v. Savage,* 896 F.2d 626, 634–35 (1st Cir.1990) (affirming the district court's sanctions order under both 42 U.S.C. § 1927 and the old Rule 11).

## II. Conclusion

The Court hopes—nay, expects—that the sanctions assessed today will ring down the curtain on this long-running litigation tragedy.[6] The victims of Schiff's hubris lie scattered across five years of litigation, from the defendants who were wrongfully accused, to the lawyers marshaled in their defense, to Angela Fusco, who sought aid from Schiff and wound up with disaster. The magnitude of the sanctions hereby awarded is commensurate with the harm done, and reflects the Court's determination to protect the public from those, like Schiff, who turn honorable advocacy into wanton attack.

The Report and Recommendation of Magistrate Judge Timothy M. Boudewyns dated March 11, 1996 is hereby accepted and adopted. The motion of defendants David Medeiros, William Filene's Sons Company, May Department Stores Company, Marsha Fogarty, Joseph Koechel, and Beverly Shea for sanctions and attorneys' fees pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927 is granted as to Attorney Ina P. Schiff and

---

**5.** The advisory committee notes to the 1993 amendments state: "Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is

needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants: all of these may in a particular case be proper considerations."

**6.** The case went to trial against the City of Warwick defendants and after Fusco testified on the first day, she and her new counsel gave up the chase and voluntarily dismissed that last phase of the case.

denied as to plaintiff Angela Fusco. The defendants' motion for reimbursement of attorneys' fees pursuant to 42 U.S.C. § 1988 is denied.

Therefore, the Court sanctions Schiff under both Rule 11 and 42 U.S.C. § 1927 and directs her to pay the movants $89,744.30 in attorneys' fees and $6,090.56 in costs.[7] After consideration of Schiff's arrogant behavior, which has persisted through even the sanctions phase of this matter, the Court is convinced that only by burdening Schiff with the full weight of her actions will she be deterred from future, similar misadventures—if and when she ever practices in this Court again.[8]

It is so ordered.

### Report and Recommendation

BOUDEWYNS, United States Magistrate Judge.

The matter before the Court is a review of defendants', William Filene's Sons Company, May Department Stores Company, Marsha Fogerty, Joseph Koechel, Beverly Shea, and David Medeiros (hereinafter collectively referred to as the "Filene's defendants" or "the movants"), motion for an award of attorney's fees and sanctions against the plaintiff, Angela Fusco, and her attorney, Ina Schiff (referred to either individually as "Fusco" or "Attorney Schiff" or collectively as "the respondents") pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1927, and Fed.R.Civ.P. 11(c)(1)(A). This matter has been referred to me for preliminary review, findings, and recommended disposition.[1] Conferences were held in this matter on October 17, 1995 and December 5, 1995 and an evidentiary hearing was held on December 15, 1995.[2]

As discussed below, I recommend that the Filene's defendants' motion for sanctions be partially granted. For the reasons discussed in detail in the following report, I believe that no reverse attorney's fees or sanctions should be levied against the plaintiff but that the requested sanctions should be levied against the plaintiff's attorney for her blatant violations of several provisions of federal procedural law. In essence, Attorney Schiff took a very simple case and artificially inflated it into a class action multi-count, multi-defendant complaint without any basis in law or fact to support her claims. Plaintiff's counsel's actions were clearly motivated by bad faith and disdain for the basic tenets of legal practice regarding civil actions in federal court.[3] In an obvious attempt to generate

---

7. The movants requested that the Court add to that award for this objection to the Report and Recommendation phase of the case but offered no evidence of the time expended hereon. Therefore, the Court leaves the magistrate judge's figure intact.

8. Recently, the Rhode Island Supreme Court finally acted on Judge Ernest C. Torres' disciplinary complaint against Schiff arising out of her false representations under oath in an attempt to secure exorbitant attorneys' fees in *Pontarelli v. Stone*, 781 F.Supp. 114 (D.R.I.1992) *appeal dismissed as moot*, 978 F.2d 773 (1st Cir.1992) and suspended her from practice for 18 months commencing July 7, 1996. *In the Matter of Ina P. Schiff*, 677 A.2d 422 (R.I.1996). That triggers an automatic suspension in this Court. Local Rule 4(e) (1984).

1. 28 U.S.C. § 636(b)(1)(B)(C); *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976).

2. As was typical throughout this case, Attorney Schiff was late for the December 5, 1995 and December 15, 1995 hearings, and was unprepared for the matters to be addressed at those hearings. The December 5th hearing was origi-nally scheduled for November 29, 1995—counsel was unavailable. Counsel were directed to meet and exchange documents and expected evidence prior to the December 5, 1995 hearing—Attorney Schiff failed to do that. Attorney Schiff was directed to provide all documents referred to in her testimony on December 15, 1995 to opposing counsel by December 22, 1995—she failed to do that. In an obvious attempt to delay a resolution of this matter, Attorney Schiff filed a motion for me to recuse myself shortly before the December 15, 1995 hearing. That motion was denied at the December 15, 1995 hearing. The appeal from that decision was denied by the District Court on February 23, 1996.

3. Attorney Schiff is no stranger to allegations of misconduct such as contained in this report. Judge Torres' opinion in *Pontarelli v. Stone*, 781 F.Supp. 114 (D.R.I.1992), *appeal dismissed*, 978 F.2d 773 (1st Cir.1992), is replete with findings of misconduct. As part of his findings Judge Torres concluded that Schiff's misrepresentation regarding the fees and costs requested, warranted referral of the matter to the attention of the Rhode Island Supreme Court's Disciplinary Counsel for such investigation and/or disciplinary action as [may be] appropriate. Inexplicably no action has been taken in over 4 years.

fees and clients the plaintiff's counsel drafted a complaint alleging violations of 42 U.S.C. § 1983 knowing there was no legal basis for such claims but also knowing that that statute has a provision for payment of attorney's fees. That was also the patent motivation for her claiming to represent a class of "similarly situated" plaintiffs. While I realize that reviewing this Report will be a very burdensome process for the Court, the time-consuming and lengthy report which follows is necessary to make absolutely sure that all of counsel's actions are reported to the Court so that appropriate action can be taken.[4]

*Factual Background* [5]

On June 19, 1991, Angela Fusco's employment at the Filene's store in Warwick Mall was terminated. *According to Ms. Fusco* the circumstances leading up to her termination were as follows: [6]

Ms. Fusco began her employment at Filene's in July, 1990 after obtaining a bachelor's degree in business administration from Bryant College. During her first three months on the job, she claims that David Medeiros made a total of four remarks to her that she considered inappropriate.[7] One of these remarks was sexually suggestive; none of them were sexually explicit.[8]

In September, 1990 Ms. Fusco complained about these remarks to her supervisor, Christa Boehm.[9] Mr. Medeiros made no further sexually suggestive or explicit remarks to Ms. Fusco again.[10] Ms. Fusco claimed that throughout her term of employment at Filene's, Mr. Medeiros spent excessive amounts of time monitoring security in the Junior's Department where she worked.[11]

In June, 1991, Ms. Fusco received a promotion.[12] On June 19, 1991, Mr. Medeiros and Jean DiBona, another Filene's security official, observed Ms. Fusco selling a $79.99 Guess jean jacket to a friend of her brother's for $4.99.[13] After attempting to justify her action, Ms. Fusco went to her office to retrieve a "single store markdown book," which she took, unescorted, to Marcia Fogerty's office.[14] Ms. Fusco admits that nobody touched her, nobody showed her a constable's badge, nobody said that she was under arrest, and nobody threatened her with any adverse consequences if she failed to go as requested.[15] In fact, Ms. Fusco was unaware

4. Several exhibits are referenced in this report. All are attached to the record developed at the evidentiary hearing. Exhibits prefaced with the letter "M" were submitted by the movants, the Filene's defendants. Exhibits prefaced with the letter "P" or labeled with capital letters are Ms. Fusco's. Unlabeled exhibits are Attorney Schiff's.

5. Attorney Schiff's post-hearing memorandum relies extensively on "affidavits" prepared and submitted *long* after all evidence was to be exchanged prior to use at the December 15, 1995 evidentiary hearing. While Attorney Schiff complained in her complaint about the defendants' failure to "follow the rules" with regards to her client's treatment, plaintiff's counsel has, almost without exception, failed to comply with deadlines, schedules or procedures established for the resolution of this case by the Court. The affidavits of Bruce Binns, Norman Bedard and Ina P. Schiff (all dated January of 1996) which were attached to Attorney Schiff's post-hearing brief were not accepted by me. All references to them, or reliance on them, in the post-hearing memorandum are stricken and have been disregarded.

6. The following facts are taken from various exhibits, mostly depositions, which are referenced. Attorney Schiff has proffered that she can now demonstrate that her client has in fact prevailed or would prevail if allowed to retry the case. Attorney Schiff had her day in court (dozens to be accurate), her revisionist history of events and facts is far too late. Her attempt to make a "silk purse" out of this case is unavailing. The record I have examined is based on information generated prior to or during the pendency of this case, her submission of materials which were *generated* after this motion was filed and the case concluded are of no value.

7. Exhibit M–13, pp. 4, 5, 6, 8.

8. *Id.*

9. *Id.*, p. 26 & 27.

10. *Id.*, p. 30.

11. *Id.*, pp. 5, 30.

12. *Id.* p. 30.

13. *Id.*, pp. 61–62, 73; Exhibit M–15, p. 101 (confirming that customer was friend, not just acquaintance of her brother).

14. Exhibit M–13, pp. 73–75.

15. *Id.*, pp. 74, 120, 121.

that Mr. Medeiros had any authority as a constable; instead, she believed he was just a store security officer.[16] On the way to the office, she passed by numerous telephones, but she chose not to make any calls.[17] Ms. Fusco claims that when she entered the office, Mr. Medeiros, Ms. DiBona and Ms. Fogerty were in the room.[18] At first, Ms. Fusco told them that she marked down the jacket's price because it was missing a button and was therefore "damaged."[19] However, when asked for information designed to retrieve the jacket and check the damage, Ms. Fusco then admitted that the jacket was *not* damaged.[20] At this point, Ms. Fusco claims that Mr. Medeiros asked her to sign a promissory note to pay back the markdown.[21] She states that she initially refused, because she had learned from two business law courses she took in college "not to sign anything."[22] She then signed the Note.[23] She claims that Mr. Medeiros spoke on the telephone to a "Sergeant somebody," indicating that she was not "cooperating."[24] She then wrote and signed a statement indicating that she had taken an improper markdown.[25] She never asked to leave the room, and never was told that she could not leave the room.[26] According to Ms. Fusco, her requests to use the telephone went unanswered.[27]

During the time that Ms. Fusco spent in Ms. Fogerty's office, several Filene's employ-ees came and went.[28] At one point, Mr. Koechel entered.[29] Ms. Fusco asked to speak with him in his office.[30] She went into Mr. Koechel's office, and asked for his assistance.[31] According to Ms. Fusco, Mr. Koechel said that he could not help her.[32]

After she signed the Promissory Note and wrote the statement, Ms. Fusco was informed that she had been terminated.[33] Marcia Fogerty walked with Ms. Fusco out of the office.[34] During that walk, Ms. Fogerty tried to comfort Ms. Fusco.[35] Ms. Fusco says that she thanked Ms. Fogerty "for not treating me like a criminal."[36]

When she arrived home, Ms. Fusco called her father.[37] He began to look for a lawyer.[38] After speaking with several sources, he hired Attorney Schiff. Ms. Fusco met with Attorney Schiff the next day, June 20, 1991, for several hours. She met with Attorney Schiff's investigator, Michael DeLorenzo, for several hours the following day. Ms. Fusco was quite shaken by what happened to her, and Attorney Schiff had difficulty getting Ms. Fusco to describe what happened.[39]

Ms. Fusco told Attorney Schiff and her investigator the information just described. At the December 15, 1995 hearing, Attorney Schiff testified that she brought some "background information" into her representation of Ms. Fusco:

16. *Id.*, pp. 119–20.

17. *Id.*, pp. 77–78.

18. *Id.*, p. 81.

19. *Id.*, pp. 80–81.

20. *Id.*, p. 85.

21. *Id.*, p. 89.

22. *Id.*

23. *Id.*, p. 90.

24. *Id.*, pp. 108–109.

25. *Id.*

26. *Id.*, p. 95.

27. *Id.*, p. 91.

28. *Id.*, pp. 82, 88.

29. *Id.*, p. 96.

30. *Id.*, pp. 97–100.

31. *Id.*

32. *Id.*, p. 100.

33. *Id.*, p. 114.

34. *Id.*, p. 118.

35. *Id.*

36. *Id.*, p. 119

37. Exhibit M–14, p. 40.

38. This fact and the others that follow in the next few paragraphs are based upon Ms. Fusco's testimony at the December 15, 1995 hearing.

39. Attorney Schiff's December 15, 1995 testimony.

1. The Warwick Police delegated certain arrest authority to store security officials, giving them the title of "constable." [40]

2. The legality of this delegation was questioned, and that the City had unsuccessfully lobbied for legislation to override the court decision.[41]

During the week that followed, Attorney Schiff claims to have obtained the following information:

Arrest statistics indicated, in Warwick Mall stores, that more women were arrested than men.

2. Warwick Police had received from Filene's a complaint about John Fusco's conduct towards store officials. The Police acted on the complaint without assigning a "file number." As part of its response to this complaint, the Warwick Police provided automobile registration information to Filene's, a situation Attorney Schiff characterized as a grave infringement of privacy rights.

3. Warwick Mall stores listed the police as "additional insureds" on their liability policies.

4. Through her contacts in the Warwick Police Department, she claimed to have learned that some individuals claimed to have heard that Mr. Medeiros boasted of sexual conquests, but she did not indicate that she obtained any information specific to his tenure at Filene's.

5. From a friend in May Department Stores management, she learned about employee policies with regard to markdowns.

6. Through an "electronic search," she learned of other situations involving May Department Store employees at other stores.

7. She spoke with James White, a criminology professor, who commented on Warwick's crime control procedures.[42]

Based upon this information, Attorney Schiff drafted the Verified Complaint for Ms. Fusco's signature. The completed document was signed by Ms. Fusco ten days after her first meeting with Ms. Schiff(June 30) and filed with the Court on July 1, 1991. In her verification of the Complaint, Ms. Fusco attested "under penalty of perjury" that she had "carefully reviewed and fully underst[ood] all statements of fact in the within Verified Complaint." Ms. Fusco admitted at the December 15, 1995 hearing that she did not carefully review the Verified Complaint and that she did not understand all of its statements of fact. When she signed the Verified Complaint, Ms. Fusco verified that she had "personal knowledge that other women similarly situated have been denied by rights guaranteed by the United States Constitution, Title VII and Rhode Island law." [43] Ms. Fusco now admits that she had no such knowledge.

Ms. Fusco testified that she told Attorney Schiff that she did not understand some of the allegations and specifically questioned the accuracy of the statements in the Verified Complaint regarding the existence of 200 other women, but that Attorney Schiff told her that the information would be developed in discovery, and that Ms. Fusco's signature was necessary to "get into court." According to Attorney Schiff, the two respondents discussed the entire Verified Complaint, line by line, prior to Ms. Fusco's signing it.

The complaint against the Filene's defendants included the following claims:

*Count I,* a claim pursuant to 42 U.S.C. § 1983 against David Medeiros alleging deprivation of rights guaranteed by the United States Constitution;

*Count II,* a Section 1983 claim against Joseph Koechel, Manager of the Filene's Store, and others;

*Count III,* a Section 1983 claim alleging conspiracy to violate plaintiffs Constitutional rights against all individual Filene's defendants;

40. *Id.*

41. *Id.*

42. *Id.*

43. Exhibit M–1, p. 19.

*Count IV*, an intentional infliction of emotional distress claim against the Filene's defendants;

*Count V*, a claim pursuant to Title VII of the Civil Rights Act 1964, 42 U.S.C.2000e et seq. ("Title VII claim") against the individual Filene's defendants and the corporate Filene's defendants;

*Count VI*, a title VII retaliation claim against the individual and corporate Filene's defendants;

*Count VII*, a claim pursuant to Rhode Island statutory law which provides civil recovery to victims of a crime.

The Filene's defendants immediately moved to dismiss the Complaint.[44] Attorney Schiff delayed her response by seeking extensions of time.[45] Although Local Rule 30(c) and Fed.R.Civ.P. 23(c)(1) provide for a 30–day deadline for filing a Motion for Class Certification, Attorney Schiff sought numerous extensions, not filing that Motion until December 3, 1991.[46] Magistrate Judge Hagopian filed a June 2, 1992 Report and Recommendation recommending denial of the class action certification.

By this time, discovery had been extensive. Plaintiff propounded document requests to the Filene's defendants[47] that called for, among other things, copies of *every document* related to Filene's purchase of Guess merchandise for sale (request # 2) and *every cash register tape* from the Junior's Department for Guess merchandise (request # 8) over a more than 18–month period. The resulting discovery response required Filene's employees and a May in-house paralegal to spend hundreds of hours of time,[48] and filled numerous boxes.[49] Also, during 1992, Attorney Schiff took depositions of Joseph Koechel, Patricia Langevin, David Medei-

ros,[50] Jean DiBona,[51] Marcia Fogerty,[52] Domenica Laurenza,[53] Wesley Blanchard, John Mulhearn, Christa Boehm, Steven Castiglioni, Dennis Morley, Edmund Culhane, David Driscoll, Brian Glancy and Beverly Shea.[54]

I had to intervene on several occasions to order the respondents to comply with discovery matters. I entered several Orders regarding respondents' answers to movants' "contention interrogatories," originally propounded during April 4–10, 1992. As recounted in Exhibit M–36, I entered several Orders and imposed certain monetary sanctions in light of unwarranted delays, objections that were "without merit" and responses that were "totally inadequate."[55] In a March 17, 1993 Report, I recommended dismissal of this action as a sanction for these discovery violations.[56] I made the following findings of fact:

1. The Filene's defendants served interrogatories on plaintiff on April 4, 1992 and April 10, 1992.

2. No answers or objections to the April interrogatories having been filed, the Filene's defendants moved, on May 8 and May 14, 1992 for orders compelling answers to those interrogatories.

3. The two motions to compel were granted, without objection, on June 8, 1992.

4. On June 23, 1992, the Filene's defendants moved for sanctions for plaintiff's failure to comply with various orders of this Court and its local rules.

5. On July 10, 1992, the Filene's defendants moved for sanctions for failure to answer its first set of interrogatories.

**44.** Exhibit M–28 (Pleadings Docket), entries 7–12.

**45.** Exhibit M–28, entries 16, 21.

**46.** Exhibit M–28, entries 22, 27, 29, 30, 36.

**47.** Exhibit M–42.

**48.** Exhibit M–31A.

**49.** Exhibit M–32.

**50.** 2 days, Exhibits M–20, 20A, 21, 21A.

**51.** Exhibit M–23.

**52.** Exhibits M–24, 24A.

**53.** Exhibits M–25.

**54.** Exhibits 27a-f.

**55.** Exhibit M–36, pp. 2–4.

**56.** *Id.*, p. 1.

6. By order entered July 17, 1992, the Filene's defendants were awarded counsel fees of $625.00 to be paid by Angela Fusco on or before August 16, 1992.

7. On July 29, 1992, the Filene's defendants moved for sanctions for substantial inadequacies in the contents of plaintiff's answers to the second set of interrogatories. This motion was granted on August 19, 1992.

8. On August 19, 1992, plaintiff's father, acting on behalf of plaintiff, tendered payment of $625.00 to the Filene's defendants' counsel, in connection with the order referenced in paragraph 6, in the form of all or mostly all coins the remainder in small bills. The tender of fees was refused by the Filene's defendants' counsel.

9. The Court held a hearing on November 4, 1992, concerning the motion referenced in paragraph 5. At that hearing, Filene's defendants' counsel provided the Court with plaintiff's answers to interrogatories referenced in paragraph 7.

10. By order dated November 20, 1992, the Court found plaintiffs' answers to interrogatories to be "totally inadequate." In addition, plaintiff's objections were found to be "without merit." Plaintiff was ordered to pay $300.00 to the Filene's defendants' counsel in connection with the expenses incurred in filing the motions which were heard on November 4, 1992 and further ordered to provide "succinct and responsive answers" within 20 days.

11. On or about December 15, 1992, the Filene's defendants filed three motions seeking sanctions for:

(a) Failure to provide answers to interrogatories as directed by this Court's order of November 20, 1992.

(b) Failure to pay counsel fees as directed by this Court's order of November 20, 1992; and

(c) Improper tender of fees ordered by this Court, referenced in paragraphs 6 and 8, in the form of coins and small bills;

12. Plaintiff opposed all three motions referenced in paragraph 11 on or about December 31, 1992, asserting:

(a) that the tender of the fee in "small bills, quarters, dimes and nickels" satisfied the Court's order referenced in paragraph 6;

(b) that plaintiff's counsel did not receive the Court's November 20, 1992 Order in the mail, but called the Court on December 15, 1992 and received the Order on December 16, 1992; and

(c) that plaintiff should be granted an extension of 20 days to comply with the Court's order referenced in paragraph 10; stating as reasons the lack of receipt of the Court's order, a restricted work schedule due to illness, a court-excused period which ended on December 2, 1992, and the asserted unavailability of plaintiff to counsel for a period ending December 11, 1992.

13. On February 1, 1993, neither the $625.00 fee nor the $300.00 fee required by the Court's orders had been paid to the Filene's defendants' counsel.

14. At the hearing held on February 1, 1993, plaintiffs counsel served answers to interrogatories, which were *due* by November 24, 1992, upon the Filene's defendants' counsel, the adequacy of which was strongly disputed by the Filene's defendants' counsel.

15. The Court found, for the reasons indicated at the hearing on this matter, that the tender of court ordered fees on August 19, 1992 in the form, of mostly coins or small bills was not in compliance with the Court's order referenced in paragraph 6.

16. As of March 17, 1993, the $625.00 fee adjudged on July 17, 1992 has not been paid, the $300.00 fee adjudged on November 20, 1992 has not been paid, and the answer's to interrogatories found to be totally deficient after a hearing on November 4, 1992 have not been meaningfully supplemented.

17. I found that the orders referenced in paragraphs 6 and 10 were explicit and clear.

18. I found that no good reason had been offered by the plaintiff for lack of compliance with the Court's orders.

19. I found that the motion to extend time to comply with the order of November 20, 1992 was not timely filed, either as a

motion to extend or as an appeal of the order itself.

20. I found that plaintiff was in willful violation of this Court's previously referenced orders.

I also had to intervene after plaintiff's father attended a deposition in violation of an agreed-upon protective order limiting access to Filene's documents to the plaintiff and Attorney Schiff's staff. I ordered Mr. Fusco not to attend these depositions and sanctioned plaintiff for this conduct.[57] Plaintiff did not appeal.

In amplification of items described above the following should be noted. After the deadline for the payment of a $625.00 sanction, John Fusco presented a bag of coins and a few small bills to the Michaelson office.[58] When this tender was refused, no further attempts at payment were made, even after a Motion for Contempt was filed. Instead, Attorney Schiff argued to the Court that Mr. Fusco could pay in coins because they are "legal tender."[59] Neither plaintiff nor her father nor counsel made any other attempt to pay this sanction, or an additional $300 sanction imposed by the Court, prior to an April 20, 1993 hearing before the District Court. At that hearing, the Chief Judge offered plaintiff the opportunity to avoid a sanction of dismissal (on appeal of my March 17, 1993 Order) if payment of these amounts (plus an additional $300) were made within the next 48 hours.[60] It was at this time that payment in full was made. At the December 15, 1995 hearing, Ms. Schiff indicated that she was aware of Mr. Fusco's non-payment, but that she did not feel it was her role to prevent her client from what might be considered his way of "thumbing his nose" at the movants and at the Court.

While the District Court was considering these sanctions-related issues, it also reviewed the Filenes defendants' Rule 12 motion to dismiss. In a January 31, 1992 Report and Recommendation, Magistrate Judge Hagopian had recommended dismissal of Counts V, VI and VII of the Verified Complaint.[61] The District Court at an October 23, 1992 hearing, adopted this portion of Magistrate Judge's Hagopian's Report and Recommendation.[62] In a June 22, 1993 Memorandum and Order the District Court also dismissed Count I against Filene's and May, as well as Count III in full.[63]

After another series of discovery motions relating to Filene's defendants' efforts to determine any factual basis for plaintiff's allegations, I recommended, in my Report and Recommendation dated August 11, 1993, that plaintiff's action be dismissed in its entirety. I further recommended that the action be dismissed with prejudice as a sanction for failure to comply with explicit court Orders regarding the answering of interrogatories. On December 15, 1993, the District Court adopted that part of the Report and Recommendation which recommended that Fusco's claims against the Filene's defendants be dismissed. Attorney Schiff then withdrew as plaintiff's attorney.[64] The case against the other defendants subsequently proceeded to trial and was ultimately dismissed on November 30, 1994. Consideration of this motion for sanctions and/or attorney's fees followed. *Plaintiff succeeded in court on no aspect of her case against any defendant.*

Plaintiff's parallel claim for unemployment benefits met with a similar lack of success. After several days of hearings,[65] the Board of Review held that Ms. Fusco was not entitled to benefits because she was discharged "for violating the company policy concerning markdowns."[66] The Decision noted that plaintiff had sold a jacket to a friend of her brother, and that plaintiff stated that she initially and inaccurately claimed that the

---

57. Exhibit M–28, entry 120.

58. Exhibit M–36, p. 3.

59. Exhibit M–35, p. 2.

60. Exhibit M–35, pp. 11–12.

61. Exhibit M–2.

62. Exhibit M–3, p. 2.

63. *Id.*, p. 28 & 29.

64. Exhibit M–28, entry 170.

65. Exhibits M–15, 15A

66. Exhibit M–16, p. 1.

jacket had a missing button.[67] The Decision became final on July 13, 1993.[68]

In support of their motion, the Filene's defendants argue that sanctions should be imposed because there was no good faith basis for the commencement of any class action, no good faith basis for the commencement of any Title VII claims without exhaustion of administrative remedies, no good faith basis for the assertion that any Filene's defendant acted under color of state law, and no good faith basis to seek extensions of time where there was no evident intention or ability to respond substantively to pending motions or discovery.

Movants claim relief based upon one of three legal bases: Fed.R.Civ.P. 11; 28 U.S.C. § 1927; and 42 U.S.C. § 1988. Movants argue that the allegations and theories of relief in the Verified Complaint are frivolous. Movants also argue that, regardless of the ultimate potential merits of portions of plaintiff's claims, Attorney Schiff conducted the litigation of this matter in a manner that unreasonably and vexatiously multiplied the proceedings.

In response, Schiff and Fusco have each filed a memorandum objecting to the motion for sanctions. In their memoranda, both Schiff and Fusco maintain that the Title VII and Section 1983 claims were well grounded in fact and brought in good faith. In addition, Fusco argues that any sanctions, if appropriate, should be assessed against her former attorney not her.

*Sanctions pursuant to Rule 11*

An attorney has a duty to say "NO" to clients when they propose to bring a suit which is without basis in fact or law.[69] Rule 11 requires an attorney to make reasonable inquiry into all the assertions which will be made in a complaint. She has to determine that the complaint is well-grounded in fact and warranted by existing law. In addition, an attorney cannot file a complaint for any improper purpose. The Rule contains two separate grounds for sanctions: failure to make an objectively reasonable inquiry into the facts or law, and bringing suit for an improper purpose.[70] Attorney Schiff is subject to sanctions under both prongs of Rule 11.

Prior to December 1, 1993,[71] Rule 11 *mandated* sanctions for filing a document, such as a complaint, for an improper purpose or under circumstances in which a competent attorney, on objectively reasonable inquiry, could not have believed that the filing was grounded in fact and warranted by existing law or by a good-faith argument for the extension, modification or reversal of existing law.[72] Rule 11 provides that, when a lawyer or other person signs a document, that person certifies:

> that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry [the document] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of ex-

67. *Id.*, p. 2.

68. Exhibits M–17,18,19.

69. *Keating v. Rhode Island*, 785 F.Supp. 1094 (D.R.I.1992).

70. *Lancellotti v. Fay*, 909 F.2d 15, 19 (1st Cir. 1990).

71. On December 1, 1993, during the pendency of the present action, an amended version of Rule 11 became effective, governing "all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings in civil cases then pending." Order Amending Federal Rules of Civil Procedure, 113 S.Ct. CDLXXVIII (Apr. 22, 1993). The First Circuit recently discussed an application of this Order. *See Silva v. Witschen*, 19 F.3d 725 (1st Cir.1994).

Two of the primary differences between the new and old versions of Rule 11 are that: (1) if a monetary sanction is imposed, under the new rule should ordinarily be paid into the Court as a penalty, rather than to the opposing party, and (2) the sanctions under the new rule are discretionary rather than mandatory, as required by the old rule. 19 F.3d at 729 & n. 5. Following the First Circuit's example in *Silva*, I believe it would be an injustice to deprive defendant of compensation for the costs caused by Attorney Schiff, disregard for established law and her vexatious litigation strategy. 19 F.3d at 727–29. Respondents were informed by my Report and Recommendation dated August 11, 1993 of their sanctionable conduct prior to the new Rule 11. Accordingly, I recommend that the Court apply the old Rule 11 to this case.

72. *Lancellotti v. Fay*, 909 F.2d at 19.

isting law, that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . .

*If the Court finds an attorney in violation of this rule, it must apply an appropriate sanction.*[73] The First Circuit and other courts have made it clear that Rule 11's "reasonable inquiry" requirements are serious.[74]

■ Movants seek Rule 11 sanctions against Ms. Fusco for verifying the Complaint in this action despite the factually frivolous nature of the claims. Movants seek sanctions against Attorney Schiff for signing the Verified Complaint notwithstanding these same factual infirmities. In addition, movants seek sanctions against Attorney Schiff for including several legally frivolous claims for relief stated in the Verified Complaint. Sanctions under Rule 11 are intended to serve the purposes of compensation and punishment,[75] as well as the primary goal of deterrence.[76] However, it should be noted that Rule 11 is not a fee-shifting statute, and serves different purposes than statutes such as 42 U.S.C. § 1988. The purposes of Rule 11 are deterrence, compensation and punishment.

■ Attorney Schiff's failure to investigate the facts underlying plaintiff's claims was unreasonable. While many clients do not contact their attorney until the eleventh hour, creating the need for immediate action, such was not the case here. Attorney Schiff had the luxury of time, as she first met with her client literally the day after the incident and, because her client was already terminated from Filene's (and did not seek reinstatement), there was no legitimate reason to seek preliminary injunctive relief.

There were good reasons to make use of the available time. As an attorney well-experienced in this area of the law, she knew that cases of this nature depend heavily upon the credibility of the plaintiffs testimony and the existence of corroborating witnesses and evidence. Attorney Schiff should have known that the issue of corroborating witnesses and evidence would be especially important in Ms. Fusco's case. Ms. Schiff testified on December 15, 1995 that she observed that Ms. Fusco was emotionally distraught during their initial meeting. Their meeting took several hours, as plaintiff was not very cogent when describing her recollection of what happened. Indeed, as Attorney Schiff testified, she herself questioned her client's credibility as the case developed. Attorney Schiff would have reached this conclusion much sooner if she had conducted an adequate inquiry into the facts before filing this action.

The complex theories of relief in the Verified Complaint also suggested the need for extensive investigation into the facts and the law prior to filing. Assuming that there were sufficient supporting facts, this case *could have been* based on relatively straightforward legal theories if Attorney Schiff had chosen to limit the action to allegations of sexual harassment by Mr. Medeiros and sexual discrimination by Filene's (Counts V, VI) and a state law tort count against Mr. Medeiros (Count IV).

However, Attorney Schiff did not limit the case in this manner. Counts I–III of the Verified Complaint allege constitutional law violations that name several of Ms. Fusco's supervisors and Warwick City officials as defendants. As Attorney Schiff chose to expand the case in this manner, her duty to investigate the facts and the law prior to filing expanded as well.

Attorney Schiffs obligation was magnified further by her decision to include class action allegations. She knew or should have known

---

**73.** *Id.* at 18–19; and *Silva v. Witschen,* 19 F.3d at 728–29 (1st Cir.1994).

**74.** *See, e.g., Ryan v. Clemente,* 901 F.2d 177 (1st Cir.1990); *Muthig v. Brant Point Nantucket, Inc.,* 838 F.2d 600 (1st Cir.1988).

**75.** *Borowski v. DePuy, Inc.,* 876 F.2d 1339 (7th Cir.1989).

**76.** 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure,* § 1336 at 100 (1990). *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990) (deterrence is the central goal of the rule).

that, within 30 days of filing the Verified Complaint, she would be required (under Fed.R.Civ.P. 23 and Local Rule 30) to present a factual and legal basis for class certification. Notwithstanding the Complaint's verification that plaintiff had "information" regarding the existence of other class members, no such information ever existed. Instead, Attorney Schiff filed the Verified Complaint on the hope that discovery would provide the information that she and her client lacked.

*The Class Action Allegations Were Not Well Grounded In Fact.*

■ Paragraph 4 of the Verified Amended Complaint contains the class allegations. Plaintiff identifies the class as:

> Plaintiff and all other women subjected to sex discrimination, sexual harassment, or gender-related deprivation of rights guaranteed by the Constitution and laws of the United States and of the State of Rhode Island by any conduct, policies, or practices of Defendants related to retail loss prevention, store or mall security, or police constables in Warwick, Rhode Island between July 1, 1988 and the present date.[77]

In making this allegation, neither plaintiff nor her attorney knew of *any* other women whose Constitutional rights had been violated by loss prevention personnel and/or constables at the Filene's store between July 1, 1988 and July 1, 1991. *At best,* respondents had anecdotal information about.

(a) Another woman (Jeanette Bolvin) who had prevailed on a false imprisonment claim against Filene's based on events that occurred in 1983 (at which time May did not even own Filene's);

(b) Other women who had made claims against personnel at other May stores at other locations in the country, with varying amounts of success;

(c) Other women whom Ms. Fusco believed had been sexually harassed by Mr. Medeiros;

It should have been obvious to Attorney Schiff that more was needed before she could file a lawsuit alleging that a class of women similarly situated to Ms. Fusco existed. There were several ways in which Attorney Schiff could have sought class information. One obvious step would have been to interview the potential witnesses that her client had identified. In light of her client's apparent difficulties of recollection, these interviews would have been appropriate even if the Verified Complaint did not contain any class allegations.

If Attorney Schiff had made such an inquiry, she would have learned of significant weaknesses in the case that came out later during discovery. For instance, in her deposition, Ms. Fusco identified Domenica Laurenza (a current Filene's employee), Cynthia Paolino (an ex-employee and friend of Ms. Fusco's) and Alison Cook (another Filene's ex-employee and friend of Ms. Fusco's) as corroborating witnesses. However, all three of these witnesses contradicted Ms. Fusco's testimony about what they knew.

At her deposition, Ms. Fusco identified fellow employee Domenica Laurenza as another woman harassed by Mr. Medeiros.[78] According to Ms. Fusco, Mr. Medeiros made several comments to Ms. Laurenza that made Ms. Laurenza feel uncomfortable, and Ms. Fusco learned of this both from Ms. Laurenza and Ms. Fusco's roommate and fellow employee, Alison Cook.[79]

The witnesses contradicted Ms. Fusco's testimony. Ms. Laurenza testified that she never said to Alison Cook or to plaintiff that Mr. Medeiros bothered her;[80] instead, she felt uncomfortable because he joked with her.[81] Ms. Laurenza also testified that Mr. Medeiros did not spend excessive amounts of time in the Junior's Department, and that security officers frequently criticized Ms. Fusco for failing to maintain neat fitting rooms, a theft risk.[82] Ms. Laurenza also recalled receiving a telephone call from an

---

77. Exhibit M–1, ¶ 4(a).

78. Exhibit M–14, pp. 71–72.

79. *Id.,* p. 72.

80. Exhibit M–25, pp. 17–18.

81. *Id.*

82. *Id.,* pp. 43–45.

attorney named "Bruce" around the time that the action was filed. She told "Bruce" that she did not have any problems with Filenes and/or David Medeiros.[83]

Ms. Cook stated that she did not know of any women other than plaintiff whom Mr. Medeiros had sexually harassed.[84] She had a "general impression" that Mr. Medeiros may have been "flirting" with Ms. Laurenza, but that was all.[85] This apparently was not based upon any statements Ms. Laurenza made to her.[86]

Ms. Fusco testified that Ms. Paolino had told her that Mr. Medeiros was known to go to hotels with women and to cheat on his wife.[87] In her deposition, Ms. Paolino denied ever making this statement to Ms. Fusco.[88] Also, Ms. Fusco testified that she often asked Ms. Paolino to accompany her to the stockroom in order to avoid being alone with Mr. Medeiros.[89] In her deposition, Ms. Paolino testified that she accompanied Ms. Fusco to the stockroom only infrequently, and that Ms. Fusco often went by herself.[90]

Instead of investigating the existence of facts to support the Verified Complaint's allegations, Attorney Schiff chose to rely upon her speculation that Mr. Medeiros must have mistreated other women because he came into contact with so many of them.[91] In fact, neither plaintiff nor her counsel *had any idea* whether a single one of the other thousands of arrests identified involved a violation of constitutional rights. As was true with their interpretation of Mr. Hovey's Affidavit, Attorney Schiff could only reach that conclusion by assuming the desired result.[92]

Ms. Fusco bears some responsibility for the class action allegations, as she chose to verify the Complaint despite knowing that these allegations were not true (or, at the very least, not possessing any "information" that they were true). Ms. Fusco testified at the December 15, 1995 hearing that she questioned her attorney about this matter and was assured that signing the Verified Complaint was proper and necessary to get her case into court. I credit Ms. Fusco's testimony as to why she verified the Complaint's false statements, particularly in light of Attorney Schiffs prior conduct, as documented in *Pontarelli v. Stone*,[93] of procuring a false affidavit from a former client.

*The § 1983 Allegations In Count I Were Not Well Grounded In Fact With Regard To Each Defendant.*

■ Count I of the Verified Complaint alleges that defendants Medeiros, Filene's and May are liable for alleged deprivations of plaintiff's constitutional rights for actions taken under color of state law.[94]

Some of the particular legal allegations are palpably frivolous. The Verified Complaint contains an allegation, at ¶ 64(a),(b) that defendants violated Ms. Fusco's rights to freedom of speech and freedom from cruel and unusual punishment. Even if the First Amendment applied in this context, there were no facts to support such claims. Also, it should be apparent to anyone that however uncomfortable Ms. Fusco became when she was sitting in Ms. Fogerty's office, this ordeal did not qualify as "cruel and unusual punishment."

■ This Count also was frivolous and in violation of Rule 11 because there was no legal basis to name Filene's and May as

---

83. *Id.*, p. 48.

84. Exhibit M–22, p. 32.

85. *Id.*, pp. 32–33.

86. *Id.*

87. Exhibit M–13, p. 23.

88. Exhibit M–26, p. 16.

89. Exhibit M–13, p. 35.

90. Exhibit M–26, pp. 22–23.

91. *See* Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Class Certification (Exhibit M–4, pp. 5–6).

92. *See Durr v. Intercounty Title Co. of Illinois,* 14 F.3d 1183, 1188 (7th Cir.) (upholding Rule 11 sanctions against attorney who "sued on behalf of a class of plaintiffs that did not exist"), *cert. denied,* 513 U.S. 811, 115 S.Ct. 63, 130 L.Ed.2d 20 (1994).

93. 781 F.Supp. at 124.

94. Exhibit M–1, ¶¶ 57–78.

defendants. As the Chief Judge wrote in his June 22, 1993 Memorandum and Order, "the doctrine of *respondeat superior* does not apply to Section 1983 claims."[95] This is an elementary, well-settled proposition of law. At no time did plaintiff's counsel offer any kind of argument to challenge this basic legal principle.

■ There also were several fatal flaws (known from the beginning by plaintiff's counsel) beneath the § 1983 claim made personally against Mr. Medeiros (as well as all of the other defendants). Most importantly, there was no factual basis for plaintiff's claim that Mr. Medeiros acted under color of state law.

As the Chief Judge's extensive survey of the law in his Memorandum and Order[96] reveals, the question of whether a private store detective acts "under color of state law" is a fact-intensive inquiry. As the cases the Chief Judge cited indicate, courts find that a party acted under the color of state law in cases of this kind *only* the action in question is made possible because the wrongdoer is clothed with the authority of state law.[97] In cases involving part-time police officers and/or private security guards who perform some police functions, courts generally find state action in only one of two circumstances. First, courts find state action when state or municipal police wrongfully arrest and/or otherwise mistreat a citizen while acting *in cooperation with* a private security officer with whom they share a "symbiotic relationship."[98] Also, courts find state action when a private actor, upon whom the state confers limited legal authority, actually uses that authority when engaging in the conduct complained of.[99]

Having analyzed the law, the Chief Judge concluded that plaintiff had adequately *alleged* state action because, among other things, plaintiff alleged that:

> after Medeiros detained Plaintiff, he told her he had been in contact with superior officers at the Warwick police department to authorize her prosecution. The Complaint also alleges that Medeiros used his authority as a police constable as well as the threat of prosecution to coerce plaintiff to sign a statement and execute a promissory note.[100]

The Chief Judge was required, under Fed. R.Civ.P. Rule 12, to assume the truth of these allegations. *Respondents knew, at the time that the Verified Complaint was filed, that both of these allegations were false.* More specifically, respondents knew, but did not tell the Court, that nobody ever told Angela Fusco that the Police were contacted; Mr. Medeiros never said that he was using his authority as a police constable; indeed, Ms. Fusco did not even know that Mr. Medeiros had constabulary authority. Therefore, even though Attorney Schiff drafted a legally sufficient Verified Complaint that could survive a Motion to Dismiss, she did so by including allegations that she knew (or should have known) were false and misleading.

The First Circuit faced exactly this situation in *Muthig v. Brant Point Nantucket,*

---

95. Exhibit M–3, p. 14.

96. Exhibit M–3.

97. *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988). (Exhibit M–3, p. 11)

98. *See, e.g., Murray v. Wal–Mart*, 874 F.2d 555 (8th Cir.1989); *Duriso v. K–Mart*, 559 F.2d 1274 (5th Cir.1977); *Smith v. Brookshire Bros., Inc.*, 519 F.2d 93 (5th Cir.1975), *cert. denied*, 424 U.S. 915, 96 S.Ct. 1115, 47 L.Ed.2d 320 (1976). (The District Court cited all of these cases at Exhibit M–3, p. 20.)

99. *Compare Traver v. Meshriy*, 627 F.2d 934 (9th Cir.1980) (off duty police officer/store detective who shows his badge and introduces himself as a police officer acts under color of state law) (Exhibit M–3, p. 20) *with Robinson v. Davis*, 447 F.2d 753 (4th Cir.1971) (college security officers who are also part time police officers and are wearing police uniform are not state actors as they are acting pursuant to instruction of college officials) (Exhibit M–3, p. 11), *cert. denied*, 405 U.S. 979, 92 S.Ct. 1204, 31 L.Ed.2d 254 (1972) and *Watkins v. Oaklawn Jockey Club*, 183 F.2d 440 (8th Cir.1950) (off duty police officer who works as security guard at race track and who ejects patron is acting on behalf of race track and not under color of state law) (Exhibit M–3, p. 11.)

100. Exhibit M–3, pp. 12–13.

*Inc., supra.*[101] In that case, an attorney representing two real estate purchasers (the Muthigs) brought a breach of contract claim against a developer, and a state law intentional infliction of emotional distress claim against a salesman (Jordan). The Complaint alleged that Jordan had engaged in "extreme and outrageous conduct," and on that basis, Jordan's Rule 12 motion was denied. Also, the Muthigs' counsel procured from them an affidavit that led to the denial of Jordan's summary judgment motion. Nevertheless, when the Muthigs testified at deposition, it was clear that Jordan's behavior was not "extreme" or "outrageous." The First Circuit upheld the district court's imposition of sanctions, stating:

> Regardless, the district court did not have before it, at the time [it denied Jordan's summary judgment motion], the Muthigs' depositions describing Jordan's behavior. The documents before the court might have suggested the existence of a factual dispute that the later depositions revealed (and counsel should have known) were illusory.[102]

In a similar way, Attorney Schiff incorporated illusory allegations into the Verified Complaint that prevented dismissal of Count I. However, as Ms. Fusco's deposition made clear, these allegations were not well grounded in fact after a reasonable inquiry.

There were other fatal flaws (known to plaintiff and her counsel from the beginning) with the factual basis for the claim against Mr. Medeiros, including the following:

1. Plaintiff entered the Filene's office where she was "detained" by herself, unescorted;

2. Plaintiff had access to a telephone before she entered the office with Mr. Medeiros;

3. Nobody ever told plaintiff that she was under arrest or that she could not leave;

4. Plaintiff never asked to leave;

5. Nobody ever told plaintiff that she was under arrest;

6. The police were never contacted.

7. In Paragraph 45, Attorney Schiff alleged that Mr. Medeiros "used his authority as a police constable and the threat of prosecution." In fact, Mr. Medeiros did not show his badge and Ms. Fusco did not even know that he was a constable. Also, he never threatened to prosecute her.[103]

8. In Paragraph 46, Attorney Schiff alleged that defendants Koechel and Fogerty were aware of complaints made against Mr. Medeiros by other women. There was no information to support this allegation.

9. In Paragraph 50, Attorney Schiff alleged that defendant Fogerty "thereafter took action to retaliate against plaintiff." In her testimony on December 15, 1995, Ms. Fusco could not say what that "retaliation" was.

10. In Paragraph 51, Attorney Schiff alleged that defendant Shea "thereafter threatened Alison Freeman." In fact, no such threat had ever been made.

These flaws demonstrate the frivolousness of any claim by plaintiff and her counsel that she was placed under arrest.

*Count II (§ 1983—Defendants' Policies And Procedures) Was Not Well Grounded In Fact.*

■■■ If the District Court agrees, in its review of Count I, that respondents' allegations of state action and/or arrest are frivolous, then it follows that Counts II and III are frivolous as well for the same reason. There are additional reasons why these counts were frivolous.

In Count II of the Verified Complaint, Attorney Schiff alleges that defendants Koechel, May and Filenes (among others) were liable for instituting policies, practices and customs that permitted the events through

---

**101.** 838 F.2d 600.

**102.** *Id.,* at 606.

**103.** *See* p. 239, *supra; see also* Exhibit M–13, pp. 118–20.

which defendant Medeiros allegedly violated plaintiffs constitutional rights.[104]

In his Memorandum and Order, the Chief Judge [105] held that plaintiff had adequately *alleged* a claim; however, he noted that "[i]t may be difficult for plaintiff ultimately to prove that the failure to screen, train, or supervise amounted to a policy which the defendants deliberately chose to implement; that such alleged policy was implemented with reckless disregard to persons' rights; or that inadequacies in screening, training, or supervision caused the alleged deprivation of her rights." [106]

Because Attorney Schiff lacked any reasonable factual basis to conclude that Mr. Medeiros (or any other Filene's official) had violated other women's rights during the alleged "class period," she certainly had no basis to conclude that Filene's management knew of such frequent prior violations.

Indeed, when it suited her purposes, Attorney Schiff acknowledged that she lacked the facts needed to bring such a claim. When she wrote Ms. Fusco to explain why the case had proceeded so badly, Attorney Schiff emphasized that the standards of proof for this type of action are "extraordinarily high," and that "absent proof of causality associated with a recklessly negligent or deliberately indifferent municipal policy or practice, official liability for Medeiros's alleged misconduct cannot be proven." [107]

Nor were respondents aided by Attorney Schiff's described consultation with Professor White. Attorney Schiff had the opportunity, as part of her December 15, 1995 testimony, to describe in detail what it was that Professor White told her to give her a basis for certain allegations in the Verified Complaint. Vague statements that Professor White concluded that something was wrong do not constitute an adequate factual basis to satisfy Rule 11, as the First Circuit held when an attorney presented a conclusory affidavit in *Ryan v. Clemente*.[108] As was true for the attorney in that case, Attorney Schiff did not indicate what facts Professor White was asked to assume, or what specific conclusions he drew based upon those assumptions. Besides, several of the "assumed" facts in the Verified Complaint (particularly those relating to class allegations) were frivolous at the time that they were stated.

To conclude, Attorney Schiff may have had *at best* sufficient basis to allege *negligent* supervision; however, she did not have anywhere near the factual basis to justify claims of corporate liability under the difficult § 1983 legal standards.

*Count III (Conspiracy) Was Not Well Grounded In Fact.*

In Count III, Attorney Schiff alleges that defendants Medeiros, Koechel, Fogerty, Shea and unknown others conspired to deprive plaintiff of her constitutional and statutory rights.[109] As the Chief Judge noted in his Memorandum and Order,[110] an essential element of that claim would be that defendants conspired to deprive plaintiff of a right *under color of state law.* Even if one assumes, *arguendo,* that plaintiff had a nonfrivolous claim that Mr. Medeiros himself was acting under color of state law, the Chief Judge noted that the alleged "conspiracy" had nothing to do with those actions. In-

---

104. Exhibit M–1, ¶¶ 68–77.

105. Exhibit M–3, pp. 23–24.

106. Exhibit M–2, pp. 23–24. *See City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (in order to prove supervisory liability for failure to train, plaintiff must show deliberate indifference to rights of persons); *Bowen v. City of Manchester,* 966 F.2d 13, 17 (1st Cir.1992) (to prove supervisory liability under § 1983, plaintiff must show unusually serious risk of harm, actual knowledge of elevated risk and failure to take obvious steps); *Bordanaro v. McLeod,* 871 F.2d 1151 (1st Cir.1989) (plaintiff must show that custom is attributable to the municipality in that it is well settled and widespread, and that policy is cause and moving force of deprivation), *cert. denied sub nom. City of Everett, Massachusetts v. Bordanaro,* 493 U.S. 820, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989).

107. Exhibit P–5, p. 4.

108. 901 F.2d 177, 179 (1st Cir.1990).

109. Exhibit M–1, ¶¶ 79–87.

110. Exhibit M–3, p. 26.

stead, respondents alleged that the "conspiracy" related to plaintiff's termination from employment, not a deprivation of civil rights.[111] Because there was *no allegation* that any concerted action to terminate plaintiff's employment was motivated by discrimination, the Chief Judge concluded that the "conspiracy" allegations were facially defective. This Count was clearly frivolous.

It is also important to note that the factual allegations underlying this legal claim were frivolous. Any claim that movants conspired to deprive plaintiff of her constitutional rights must refer to what occurred on June 19, 1991, as there is no allegation that Ms. Fusco's constitutional rights were affected prior to that date. To prove that a conspiracy existed, plaintiff would have to prove the existence of an agreement among the conspirators.[112] Even if one assumes, *arguendo*, that plaintiff was wrongfully "arrested" and "detained," respondents had absolutely no factual basis to justify naming movants Koechel, Fogerty and Shea as "co-conspirators." At best, accepting uncritically the truth of plaintiff's account, defendants Shea and Fogerty spent some time in the same room as plaintiff prior to her termination and defendant Koechel said he could not help her. There were no facts from which Attorney Schiff could reasonably allege that these three defendants were part of a "conspiracy" which planned and executed the actions which began when plaintiff chose to sell a $79.99 Guess jean jacket to her friend for $4.99. The claim against Ms. Fogerty is especially frivolous in light of plaintiff's testimony that, when she left the office, Ms. Fogerty offered some kind words, plaintiff thanked Ms. Fogerty for "not treating me like a criminal," and Ms. Fogerty hugged her.[113]

*Count IV (State Law Intentional Infliction) As Brought Against Defendants Filene's And Koechel Was Not Well Grounded In Fact.*

Count IV's intentional infliction of emotional distress claims against Defendants Koechel and Filene's were also frivolous. Under Rhode Island law, a showing of "extreme and outrageous conduct" is an essential element of a claim for intentional infliction of emotional distress.[114] Plaintiff's only charges against Mr. Koechel are that he failed to act on her complaint about Mr. Medeiros, and that he failed to help her when she was detained shortly before her termination from Filene's.[115] Plaintiff does not claim that Mr. Koechel was impolite, uncivil or that he made inappropriate remarks; in fact, she testified in her deposition that Mr. Koechel was "complimentary," that when she told him about Mr. Medeiros, Mr. Koechel "seemed shocked, and he was concerned," and that "she was very happy with Mr. Koeschei [sic] on how he was ... acting like a father figure." [116] Attorney Schiff had no basis to name Mr. Koechel as an individual defendant with regard to Count IV.

Nor did Attorney Schiff have a reasonable basis to include an intentional infliction of emotional distress claim against Mr. Medeiros's employer, Filene's. In order for an employer to be held vicariously liable for the employee's intentional tort, the plaintiff must prove that the employer participated in, authorized, or ratified the employee's action.[117] The only alleged conduct of Mr. Medeiros that might qualify as "extreme and outrageous" would be the remarks he made to plaintiff in July—September, 1990. Attorney Schiff had no factual basis to contend that Defendant Filene's participated in, authorized or ratified this conduct.

111. *Id.*

112. *U.S. v. Patterson,* 644 F.2d 890 (1st Cir. 1981).

113. Exhibit M–13, pp. 117–19.

114. *Curtis v. Dept. for Children & Their Families,* 522 A.2d 203, 208 (R.I.1987) (citing *Elias. v. Youngken,* 493 A.2d 158, 163–64 (R.I.1985)).

115. Exhibit M–13, pp. 5,50–52,97–106.

116. Exhibit M–13, pp. 5, 51, 55–56.

117. *Reccko v. Criss Cadillac Co., Inc.,* 610 A.2d 542, 545 (R.I.1992).

*Counts V and VI (Title VII) Were Frivolous Because Plaintiff Failed To Exhaust Administrative Remedies.*

■ Similarly, Attorney Schiff did not act in good faith in bringing a Title VII claim against the Filene's defendants. Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." [118] However, Title VII requires exhaustion of administrative remedies as a condition precedent to bringing a Title VII suit in federal district court. [119] First, Attorney Schiff brought a Title VII case without exhausting her client's administrative remedies. In numerous pleadings, Attorney Schiff asserted that this failure was excused by the plaintiff seeking injunctive relief against the defendants. However, the record clearly indicates that: 1) plaintiff took no further action with respect to the preliminary injunction other than including it in her original complaint; 2) Fusco, in her prayer for the preliminary injunction sought to enjoin defendants from continuing to harass plaintiff, however, because plaintiff was already terminated the matter was moot; and 3) since the complaint was filed on behalf of individuals similarly situated and there was no substantive evidence presented as to the existence of such individuals, there was no basis for the injunction. Therefore, Attorney Schiff's argument that her client's failure to exhaust administrative remedies was excused because of her attempt to seek preliminary injunctive relief is clearly meritless.

Regardless of Fusco's failure to exhaust her administrative remedies, Attorney Schiff also lacked the necessary facts to support a Title VII claim. The following is an excerpt from Fusco's deposition:

Q: So, sitting here today, you don't know a single fact that indicates that David Medeiros has sexual relations with anybody, isn't that correct?

A: No.

Q: What do you know, sitting here today?

A: I had heard through my attorney.

Q: What did you learn through your attorney?

A: That he would pressure shoplifters into having sexual—some form of sexual relations with him.

Q: What specifically?

A: I don't know specifically what he had them do.

Q: Are you aware of any specific individual or instances?

A: If I am, I don't remember now.

Q: The fact is, you don't have and never had any specific information concerning any specific individual having relations with David Medeiros, isn't that true?

A: I don't remember right now.

Q: What information did you get from the Warwick Police Department that Defendant Medeiros had obtained sexual favors from women employees and customers of Filene's and May Company?

A: I don't remember the specifics on that right now.

■ As indicated in Magistrate Judge Hagopian's Report and Recommendation, [120] Title VII's requirement of exhaustion of remedies is normally required. In an effort to circumvent this requirement, Attorney Schiff included a frivolous claim for interim relief seeking a temporary injunction barring further "retaliation" against Ms. Fusco. [121] Attorney Schiff, who never formally sought this relief, added this claim for the improper purpose of avoiding the requirement of filing with the Rhode Island Human Rights Commission. The claim was frivolous because Ms. Fusco already had been terminated. There was no possible "retaliation" to enjoin. Attorney Schiff's actions are therefore sanctionable under Rule 11.

**118.** 42 U.S.C. § 2000e–2(a)(1).

**119.** *Jensen v. Frank,* 912 F.2d 517, 520 (1st Cir. 1990).

**120.** Exhibit M–2, pp. 10–11.

**121.** Exhibit M–1, p. 15, prayer for relief no.2.

*Count VII (Obstruction of Justice) Was Not Well Grounded In Fact.*

█ Count VII of the Verified Complaint alleges that Defendant Beverly Shea intimidated witness Alison Freeman.[122] This Count was frivolous because it was without any factual or legal basis.

Attorney Schiff did not have any written statement from Alison Freeman that supported her claim of intimidation.[123] Instead, Attorney Schiff relied upon Ms. Fusco's interpretation of a telephone conversation with Alison Freeman, as well as a supposed comment from a friend.

Ms. Fusco's recollection of her conversation with Ms. Freeman was shaky. First, she denied any recollection whatever of the conversation.[124] Then she said that Alison indicated that she had been "singled out" for a conversation with Beverly Shea.[125] Then she stated that Ms. Shea had told Ms. Freeman to "watch it." [126] Then, plaintiff embellished her account further, stating that Ms. Freeman felt that Ms. Shea's remarks were "like a threat." [127] Ms. Freeman did not say that the threat involved adverse employment action; this was something plaintiff inferred herself.[128] Then, at her deposition, plaintiff said that she felt "confused" and requested a recess.[129] When she resumed her testimony, plaintiff stated that she was "99 percent sure" that she had learned about Ms. Freeman's situation from plaintiff's friend Alison Cook, who had spoken with Ms. Freeman. In her deposition, Ms. Cook failed to describe any such conversation.[130]

Alison Freeman spoke with defense counsel on or around July 23, 1991.[131] She indicated that she had met with Beverly Shea and that Ms. Shea had advised her that Ms.

Freeman could speak to anyone she chose; however, she should be "careful" in what she said.[132] Ms. Freeman emphatically stated that she was never threatened and never felt so, that Ms. Freeman told plaintiff that Ms. Freeman had not been harassed by Ms. Shea, and that she told plaintiff's mother that Ms. Shea never threatened Ms. Freeman. Ms. Shea's deposition testimony contained the same recollection.[133] Given that Attorney Schiff only had plaintiff's shaky, inconsistent and hearsay account on which to base her claim that Ms. Shea had intimidated Ms. Freeman, Count VII of the Complaint was factually frivolous.

Magistrate Judge Hagopian found that Count VII was legally inadequate as well, given that plaintiff did not allege that any threat was related to a pending proceeding.[134] This provides another reason for concluding that Count VII of the Verified Complaint was frivolous and filed in violation of Rule 11.

For all of the preceding reasons, sanctions ought to be imposed against Attorney Schiff only. No sanctions should be imposed against plaintiff Fusco. The amount of the sanction will be discussed, *infra.*

*Reimbursement of Attorneys' Fees and Costs*

█ The Filene's defendants also contend that Attorney Schiff is sanctionable under 28 U.S.C. § 1927. 28 U.S.C. § 1927 provides that:

> any attorney or other person admitted to conduct cases in any court of the United States ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the Court to satisfy personally the excess costs, ex-

---

**122.** Exhibit M–1, ¶¶ 106–110.

**123.** Exhibit M–12, Answer to Interrogatories Nos.34,35.

**124.** Exhibit M–14, p. 54.

**125.** *Id.,* p. 55.

**126.** *Id.,* pp. 55–56.

**127.** *Id.,* 56.

**128.** *Id.*

**129.** *Id.,* p. 58.

**130.** Exhibit M–14, p. 60.

**131.** Exhibit M–29.

**132.** *Id.,* p. 4.

**133.** Exhibit M–27f, pp. 53–57.

**134.** Exhibit M–2, p. 12.

penses, and attorney's fees reasonably incurred because of such conduct.

Similar to Rule 11, Section 1927 does not require a finding of subjective bad faith as a predicate to the imposition of sanctions.[135] However, the attorney must act "unreasonably" and "vexatiously" in multiplying the proceedings. The term "unreasonably and vexatiously" in Section 1927 has been defined as "an intentional departure from proper conduct or, at a minimum ... a reckless disregard of the duty owed by counsel to the court." [136] Moreover, behavior is "vexatious" when it is harassing or annoying.[137] Thus, "a violation of Section 1927 will occur when an attorney acts in substantial disregard of whether her conduct is harassing or annoying." [138]

The Rule 11 analysis set forth previously has already established that the claims by Attorney Schiff on behalf of Fusco were not well grounded in fact and brought in bad faith; therefore, the only remaining consideration for this discussion is whether she also acted "vexatiously." The record in the instant case is replete with instances where respondents' actions were harassing or annoying.

In this action, Attorney Schiff's class action allegations and additional charges against peripheral defendants just begin the list of ways in which she vexatiously multiplied the proceedings before this Court. The docket sheet[139] reveals that Attorney Schiff protracted the litigation in many ways:

* Filing numerous motions to enlarge the time to respond to defendants' motions. *E.g.*, entries 16, 20, 22, 27, 29, 53, 125, 126, 143, 156;

* Filing a frivolous motion for sanctions in which plaintiff argued that a jury instruction in a superior court state law wrongful arrest case represented a binding precedent as to the law in this action (entry 24);

* Filing a frivolous Motion to Amend Complaint, in which respondents sought to add to this action a claim that already was the basis of a separately filed action (C.A. No. 92–0239–P) (entry 61);

* Failing to produce discovery in a timely and/or responsive manner (Exhibit M–36)

* Presenting John Fusco as a "note-taker" to attend depositions in violation of a protective Order (entry 66);

* Allowing her client (through her father) to "thumb his nose" at Mr. Michaelson and the Court by presenting payment for a sanction in coins and small bills (Exhibit M–36);

* Failing to tender payment of any kind whatever for six months after the imposition of another sanction by the Court (Exhibit M–36);

Also, the docket reveals several other ways in which Attorney Schiff vexatiously multiplied these proceedings:

* Propounding abusive, onerous written discovery requests such as Exhibit M–42, Request No. 8 (cash register tapes, other documents reflecting the sale of any GUESS merchandise sold by Department # 399 from January 1, 1990 to the present) and Request No. 20 (copies of all cash register tapes, charge slips, computer printouts or other documents reflecting any sales entered by plaintiff at any time during her employment);

* Taking numerous depositions of Warwick police officials on such tangential issues as the provision of license plate information.[140]

* Protracting the depositions of Filene's witnesses with pointless questions.[141]

---

**135.** *See Cruz v. Savage*, 896 F.2d 626, 631–32 (1st Cir.1990).

**136.** *United States v. Ross*, 535 F.2d 346, 349 (6th Cir.1976).

**137.** *Cruz*, 896 F.2d at 632.

**138.** *In re Louanne Frances Anderson*, 128 B.R. 850 at 856 (D.R.I.1991).

**139.** Exhibit M–28.

**140.** *See* Dennis Morley, Exhibit M–27e(1) and David Driscoll, Exhibit M–27e(3).

**141.** Exhibit 21A, pp. 9–21.

In sum, Attorney Schiff's view of the role of discovery was doubly skewed. First, as Ms. Fusco testified, Attorney Schiff filed the Verified Complaint aware that she possessed no basis for certain factual allegations (such as those alleging a class of plaintiffs), but viewed discovery as an opportunity to find an after-the-fact justification for bringing the suit. Second, Attorney Schiff viewed discovery as an opportunity to investigate theories that had nothing to do with the allegations in the Verified Complaint, such as the issue of license plate information. In the meantime, Attorney Schiff's fishing expeditions cost movants both in terms of time [142] and in terms of financial expense.[143]

■ To conclude this section 1927 discussion *even if one assumes that there was a non-frivolous core to the Verified Complaint,* it was Attorney Schiff's decision to turn this matter into a dramatically inflated case. As Mr. Michaelson testified, he represented the same client in a different matter that went through trial, *Pandozzi v. May Department Stores Co.,* C.A. No. 93–0030–B, defense verdict) for a total fee between $10,000 and $15,000. The *Fusco* case cost the movants almost $100,000. It is for precisely this type of conduct that 28 U.S.C. § 1927 sanctions are appropriate. The amount of the sanction will be discussed, *infra.*

### Reimbursement of Attorney's fees pursuant to Section 1988

The movants also seek an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988(b). In *Roadway Express, Inc. v. Piper,*[144] the Supreme Court determined that 42 U.S.C. § 1988 permits recovery of attorneys' fees only from a party, not from opposing counsel. That section provides:

### (b) Attorney's fees

In any action or proceeding to enforce a provision of section[ ] ... 1983 ... of this title ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.[145]

■ In *Christiansburg Garment v. EEOC,* the Supreme Court held that [42 U.S.C. § 1988] authorizes an attorney's fee award to prevailing defendants as well as to prevailing plaintiffs.[146] However, an award for the defendant requires more than a showing that the defendant is a prevailing party.[147] The trial court may, in its discretion, award attorney's fee to a prevailing defendant upon a finding that plaintiffs suit was "frivolous, unreasonable, or without foundation."[148] A finding of frivolousness "requires a showing that the claims asserted were groundless, that is to say, that a reasonable person would recognize them as having no merit."[149] It need not find subjective bad faith on the plaintiffs part.[150] Moreover, "when multiple defendants are involved, the claims against each must be evaluated separately."[151] This inquiry is applicable to both

---

142. Exhibits M–31, 31–A.

143. Exhibit M–30.

144. 447 U.S. 752, 760–63, 100 S.Ct. 2455, 2460–63, 65 L.Ed.2d 488 (1980).

145. 42 U.S.C. § 1988.

146. *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978).

147. The Court reasoned that there were two strong equitable considerations for granting an attorney's fee award to a prevailing plaintiff that were absent in the case of a prevailing defendant. The plaintiff is Congress' chosen instrument to vindicate "a policy that Congress considered of the highest priority." *Christiansburg,* 434 U.S. at 418, 98 S.Ct. at 699 (quoting *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)). "[W]hen a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law." *Christiansburg,* 434 U.S. at 418, 98 S.Ct. at 699. Congress, however, also wanted to protect defendants from burdensome litigation having no legal or factual basis. *Id.,* at 420, 98 S.Ct. at 699–700.

148. *Id.* at 421, 98 S.Ct. at 700.

149. *Pontarelli,* 781 F.Supp. at 127.

150. *Id.*

151. *Id.,* at 126.

a 42 U.S.C. § 1988 action and a 42 U.S.C. § 2000e–5(k) action.[152]

In the present case, plaintiff's claims are all related in that all of them arise out of the same nucleus of facts. Moreover, the movants prevailed on all counts of plaintiff's complaint. In addition, the Court denied plaintiff's Motion to Certify this matter as a Class Action.[153] In her verified complaint, plaintiff sought a prayer for injunctive relief; however, plaintiff did not pursue that claim. In addition, on approximately November 30, 1994, plaintiff dismissed all of her claims against the City of Warwick defendants.

 This Court has discretion whether to impose reverse attorney's fees under 42 U.S.C. § 1988.[154] Movants submit that Ms. Fusco is more culpable and deserving of a sanction than were the policemen in *Silva v. Witschen.* As the District Court noted in that case, the sanctionable conduct was due to the attorney's presentation of a frivolous legal theory. The District Court did *not* find that the factual allegations were inaccurate. As a result, only the attorney and not the clients could be held responsible for filing the complaint. Also, the District Court found that the attorney, not the client, had acted with an improper purpose. Here there is no strong showing of bad faith by Ms. Fusco. She honestly believed she had a valid cause of action for what she thought was an unfair termination. She told her story to Attorney Schiff and left the rest to Attorney Schiff to guide her through the suit.

Ms. Fusco related the facts of her experience to Attorney Schiff, during the course of several meetings that took place the week after Ms. Fusco was fired. As demonstrated at the evidentiary hearing on December 15, 1995, Attorney Schiff added considerable fac-

tual details apparently based on her own investigation and belief. Ms. Fusco went over the complaint before signing it. If she was unsure of any particular allegation, she asked her lawyer about it. Her lawyer assured her that there was a reasonable factual and legal basis supporting all allegations, including those beyond Ms. Fusco's direct, personal, first hand knowledge. As Ms. Fusco stated at least twice in her testimony at the hearing, there was nothing in the complaint that she knew or believed to be false. On the contrary, she either had first-hand knowledge or a reasonable basis to believe each fact *or* her lawyer assured her that there was reasonable basis for believing it.[155] The present attorneys for Ms. Fusco have pointed out in their brief that:

> Ms. Fusco reasonably and in good faith believed that she had been harassed by Medeiros and unlawfully terminated by Filene's, acting by and through various managers, the individually named defendants in this case. She presented the factual basis for her belief fully and accurately to her attorney.

The motion for "reverse" attorney's fees from Ms. Fusco should be denied.

*Calculation of Defendants' Requested Attorney's Fees and Costs*

The Court in *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litigation* stated that "When statutory exceptions pertain, we have directed district courts, for the most part, to compute fees by using the time-rate-based lodestar method ... [A] court arrives at the lodestar by determining the number of hours productively spent on the litigation and multiplying those

---

**152.** *Id.* at 126 (citing *Hughes v. Rowe,* 449 U.S. 5, 14–16, 101 S.Ct. 173, 178–79, 66 L.Ed.2d 163 (1980)).

**153.** *See* Magistrate Judge Hagopian's Order denying plaintiff's motion, dated June 2, 1992.

**154.** *Compare Pontarelli,* 781 F.Supp. 114 *with Silva v. Witschen,* C.A. No. 90–0005 (D.R.I. November 5, 1992) (slip op.), pp. 15–16 (declining to impose reverse attorney's fees against client).

**155.** Mr. Michaelson stated during his direct examination at the hearing on December 15, 1995,

that he had extensive experience in litigating cases of this type. Based on his experience, he stated that cases factually similar to this one normally cost between ten and fifteen thousand dollars to defend. He was then asked to explain the wide disparity between the ordinary cost of factually similar cases and the exorbitant cost expended in this case. He responded that the reason that this case cost so much was because of the character, tactics and conduct of plaintiff's counsel, Ina Schiff. Therefore, movants' own testimony supports the conclusion that any sanctions should be directed against Attorney Schiff alone, not Angela Fusco.

hours by reasonable hourly rates."[156] Defendants' attorneys[157] have submitted affidavits and detailed accounting records showing a total claim of $95,834.85, a sum which represents the attorney's fees and costs incurred in defending against the plaintiff's claims and prosecuting this sanctions motion. The fees and costs claimed break down as follows:

1. Fusco v. Medeiros, et al. prior to judgment:

| | | |
|---|---|---|
| Julius C. Michaelson | 072.25 @ $150.00/hour: | $10,837.50 |
| Jeffrey S. Michaelson | 354.75 @ $150.00/hour: | $53,212.50 |
| Jeffrey S. Michaelson | 7.70 @ $125.00/hour: | $00,962.50 |
| Rosemary Lemmis | 030.90 @ $090.00/hour: | $02,781.00 |
| Elizabeth Colt | 014.90 @ $100.00/hour: | $01,490.00 |
| Samuel Zurier | 002.20 @ $100.00/hour: | $00,220.00 |
| Jodi Gladstone | 028.00 @ $100.00/hour: | $02,800.00 |
| | TOTAL ATTORNEYS' FEES = | $72,303.50 |

2. Fusco v. Medeiros, et al. subsequent to judgment 11/16/94—11/30/95:

| | | |
|---|---|---|
| Jeffrey S. Michaelson | 009.90 @ $150.00/hour: | $01,485.00 |
| Elizabeth Colt | 006.50 @ $100.00/hour: | $00,650.00 |
| Samuel Zurier | 116.20 @ $150.00/hour: | $17,430.00 |
| | TOTAL ATTORNEYS' FEES = | $19,565.00 |

3. Fusco v. Medeiros, et al. subsequent to judgment 12/01/95—12/31/95:

| | | |
|---|---|---|
| Samuel Zurier | 072.80 @ $150.00/hour | $10,920.00 |
| | TOTAL ATTORNEYS' FEES = | $10,920.00 |

4. Administrative costs incurred:

| | |
|---|---|
| Prior to judgment | $05,910.86 |
| Subsequent to judgment 11/16/94—11/30/95 | $00,155.70 |
| Subsequent to judgment 12/01/95—12/31/95 | $00,024.00 |
| TOTAL COSTS INCURRED = | $06,090.56 |

| | |
|---|---|
| TOTAL FOR ALL SERVICES AND EXPENSES | $108,879.06 |

LESS:

| | |
|---|---|
| Fee Award from plaintiff(-) | $01,225.00 |
| Deduction for unemployment defense costs(-) | $06,936.30 |
| Deduction for Fusco II(-) | $04,882.90 |

| | |
|---|---|
| FINAL TOTAL | $95,834.86 [158] |

---

When determining what is a reasonable number of court hours, courts may look to the number of hours actually spent and then subtract any hours which appear to be duplicative, unproductive, excessive or otherwise unnecessary.[159] Another factor to assist the court in this area is "whether counsel substantially exceeded the bounds of reasonable effort."[160] In reviewing the movant's records, I find all entries to be compensable and none to be unreasonably excessive. There was no duplication of work effort, nor

156. 56 F.3d 295, 304 (1st Cir.1995).

157. Michaelson & Michaelson of Providence, Rhode Island.

158. These figures were taken from Filene's Defendants' Memorandum In Support of Attorney Fees, Exhibit "A", Filene's defendants' hearing Exhibit M–33 and Filene's defendants' post hearing memorandum, Exhibit D. These exhibits are detailed accounts of the total hours, and the enumerated costs accrued defending against plaintiff's meritless claims and the current request for sanctions.

159. United States v. Metropolitan Dist. Commission, 847 F.2d 12, 15 (1st Cir.1988).

160. In re Sherri Spillane, 884 F.2d 642 (1st Cir.1989)(quoting Pilkington v. Bevilacqua, 632 F.2d 922, 925 (1st Cir.1980)).

an inordinate number of hours expended on any one task.[161]

Another area where the courts look in order to determine if the work hours are excessive or unnecessary is in the time records kept by the attorneys.[162] In instances where courts have found generalities in time keeping records, they have reduced the amount of fee award.[163] In the present case, the entries are sufficiently detailed in that they note the number of hours spent on tasks, the subject matter involved and the nature of the task. In addition, there appear to be no excessive hours for the described tasks. One entry, which has one of the higher amounts of billable hours is an entry on May 14, 1992 for Attorney Jeffrey S. Michaelson. This entry is for 8.90 billable hours. The entry states:

> Prepare for deposition: take Cooke deposition, Mr. Fusco deposition; Draft Motion to Extend Time to take Mrs. Fusco deposition and Motion for Independent Psychological Examination.[164]

This entry is specific as to the subject matter of the tasks performed, the dates of performance and the number of hours spent by the attorneys. In my review of billable hours submitted by the movants, I do not find the amount of time spent on the above tasks, or any other tasks outlined by them, to be excessive or otherwise inappropriate. In addition, the records appear to be an accurate and contemporaneous record of billable hours. In Attorney Jeffrey S. Michaelson's March 31, 1995 affidavit he states "These bills were created contemporaneously, or nearly so, with the work being performed, in accordance with the usual and customary practice in our office," as required under the *Grendel's Den* rationale.

■ The Court, under the lodestar analysis, must also review the reasonableness of the requested rate of compensation. "The reasonable hourly rate is usually stated to be that prevailing in the community for similar work."[165] Counsel for Filene's defendants seek a rate of $150 per hour for partners, $100 per hour for associates, and $90 per hour for a law clerk. It is noted that counsel charges a fee of $90 for a law clerk employed in connection with the present case. Counsel, in his affidavit, indicated that the law clerk, Rosemary Lemmis, was a licensed California attorney who performed the tasks listed, under the supervision of a partner within counsel's law firm. Lemmis performed a total of approximately 30.90 hours of work in connection with the present case. When taking into account the length of this case, the exorbitant amount of paperwork generated by plaintiff and Lemmis' qualifications, the hourly rate for her services does not appear to exceed the bounds of reasonableness. The requested range of charges are reasonable. The charges of $150 per hour for partners, $100 for associates and $90 for a law clerk should be allowed.

Movants maintain that Attorney Schiff should pay 100% of the fees and costs incurred as a sanction for the following reasons:

(1) The class allegations were frivolous as there was no legal or factual basis for the statements in the Verified Complaint;

(2) Counts I—III were frivolous against all defendants as respondents had no

---

**161.** *See Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir.1992) (in assessing the reasonableness of fees, a court should "ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism.")

**162.** In *Grendel's Den, Inc. v. Larkin, et al.*, 749 F.2d 945, 952 (1st Cir.1984), the First Circuit served notice that the absence of detailed, contemporaneous time records will call for a substantial reduction in awards, in all but extraordinary circumstances.

**163.** *See Lipsett*, 975 F.2d at 938; *See also Tennessee Gas Pipeline Company v. 104 Acres of Land, More or Less, in Providence County, State of* *Rhode Island*, 32 F.3d 632, 634 (1st Cir.1994) (entries of generalities such as "confer with client", "review materials", "review documents" and "legal research" were not sufficiently detailed as to the subject matter involved in each area, thereby causing a reduction in the fee award).

**164.** *See* Affidavit of Jeffrey S. Michaelson, March 31, 1995.

**165.** *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983) (quoting *Copeland* 641 F.2d at 892); *see Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984).

adequate factual basis to allege state action;

(3) Count I was frivolous against the Filene's defendants as there is no legal basis for vicarious liability under 42 U.S.C. § 1983;

(4) Count II was frivolous against all defendants as respondents lacked an adequate factual basis to allege a pervasive "practice, policy or custom";

(5) Count III was frivolous because respondents did not plead sufficient facts to imply a conspiracy, and because respondents lacked any factual basis for such allegations;

(6) Count IV was frivolous against Koechel, as his conduct was not "extreme and outrageous";

(7) *To the extent that they were part of this action,* Counts V and VI (Title VII) were frivolous because plaintiff had failed to initiate, never mind exhaust her administrative remedies prior to suit;

(8) Count VII was frivolous because it was facially defective (no pending proceeding) and because plaintiff lacked any reasonable factual basis for the claim.

If the Court were to conclude that the entire action was frivolous, Attorney Schiff would be liable for 100% of the costs incurred litigating the federal court lawsuit, after adjustment is made for several matters. Exhibit M–30 contains copies of invoices totaling $78,214.36. As Exhibits B, C and D attached thereto indicate, that amount should be adjusted as follows:

* $6,936.30 deduction for defense costs of the unemployment hearing;

* $4,882.90 deduction for *Fusco II* expenses.

* $1,225.00 deduction for fines already paid;

* $30,664.70 *increase* for costs incurred litigating this Motion (based on Exhibit M–33 for time spent November 16, 1994 through November 30, 1995 and Exhibit

D attached for time spent during December 1995);

Attorney Schiff would be liable for a total of $95,834.86. None of these amounts includes a request for fees and expenses incurred after December 31, 1995.

■ Any attempt to further break-out expenses, as a practical matter, is impossible. Attorney Schiff stated eight theories of relief in the Verified Complaint (seven counts plus class action allegations) against six Filene's defendants. While not all Filene's defendants are named for each count, there are still a total of approximately 35 combinations. One simply cannot split the $95,834.86 into 35 boxes of expenses. Nor is such an exercise legally required. "Rule 11 does not limit the amount of a sanction to an attorney's fee or some part of an attorney's fee." [166] In the past, a district court in this Circuit has imposed a sanction equal to the defendant's entire attorney's fee even though a portion of the plaintiff's conduct was not strictly sanctionable, and the First Circuit upheld this award.[167]

■ There are good policy reasons to support such a result. It is burdensome and costly for movants to do this work. Much time has been spent trying to analyze and categorize invoices and time records from as far back as 1991. The Verified Complaint contained frivolous claims intertwined with nonfrivolous claims. Any allocation of time spent on frivolous versus non-frivolous portions of the complaint is impossible.

*Conclusion*

For the reasons stated herein, I recommend that sanctions be imposed against Attorney Schiff pursuant to Rule 11 and 28 U.S.C. § 1927. Specifically, I recommend that the Filene's defendants' motion for attorney's fees be granted in the amount of $89,744.30 against Attorney Schiff. Finally, I recommend that the Filene's defendants be allowed costs of $6,090.56 from Attorney Schiff.

Any objection to this Report and Recommendation must be specific and must be filed

---

**166.** *Bay State Towing Co. v. Barge American 21,* 899 F.2d 129, 133 (1st Cir.1990).

**167.** *Muthig v. Brant Point Nantucket,* 838 F.2d at 606.

with the Clerk of Court within ten (10) days of its receipt.[168] Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the district court.[169]

March 11, 1996.

---

**168.** Rule 32, Local Rules of Court; Fed.R.Civ.P. 72(b).

**169.** *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980).